URBAN ZEDIKER V. STATE OF NEBRASKA.

FILED JANUARY 23, 1926. No. 24890.

1. **Information: BURGLARY AND LARCENY: SINGLE COUNT.** Burglary and larceny may be charged in a single count of an information, where the criminal acts of which the defendant is accused constitute parts of the same transaction. Under such information there may be a conviction of either or both felonies, as the evidence may require.

2. **Criminal Law: OBJECTION TO EVIDENCE.** Where testimony in the nature of hearsay is sought to be introduced, an objection on the ground that the same is "incompetent" is sufficient in form and substance.

3. ———: ———. Where an objection to the introduction of evidence is once made and overruled, it is not necessary to repeat the objection to further testimony of the same nature by the same witness in order to save error, if any, in the ruling of the court whereby such testimony was received.

4. ———: **CONSPIRACY: EVIDENCE: ADMISSIBILITY.** Wherever the writings or words of any of the parties charged with, or implicated in, a conspiracy can be considered in the nature of an act done in furtherance of the common design, they are admissible, not only against the party himself, but against all of his coconspirators, whether present or not. Wherever the writings or words of such party amount to an admission merely of his own guilt, and cannot be deemed acts done in furtherance of the common design, they can be received in evidence only

Zediker v. State.

against the party making or uttering them. *Held*, under the facts as reflected by the record in the case, statements set forth in this opinion, testified to over objection, were the recital or narration of a past transaction merely, and were not made in furtherance of the common design.

5. ———: CHANGE OF VENUE. "The Constitution guarantees to every person charged with crime a trial by an impartial jury. If there is such a prejudice in the minds of the people of the county against the defendant, or such a firm conviction of his guilt of the crime charged against him that there is substantial and well-founded reason to believe that he cannot obtain a fair trial in the county, the Constitution requires that the venue be changed. The trial court must exercise discretion in determining these facts, but has no discretion to refuse the change of venue when these facts appear." *Lucas v. State*, 75 Neb. 11.

6. ———: ———: ABUSE OF DISCRETION. In view of the facts and circumstances set forth in the record and referred to in this opinion, *held*, that a change of venue should have been granted, and that the refusal so to do constituted an abuse of discretion on the part of the trial court.

ERROR to the district court for Box Butte county: WILLIAM H. WESTOVER, JUDGE. *Reversed, with directions.*

*M. F. Harrington* and *E. C. Barker*, for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

From conviction of larceny, after his separate trial, upon information filed in the district court for Box Butte county charging the defendant (plaintiff in error) and three others in one count jointly with burglary and larceny, alleged to have been committed at the same time and as one transaction by all defendants, Urban Zediker has appealed.

The first question presented by the record is the legal effect of the verdict returned by the jury that they "do find the defendant Urban Zediker guilty of larceny,"

and containing no finding on the charge of burglary. The contention is made that this verdict operates to acquit the defendant of both crimes charged in the information. With this contention we do not agree. The information is properly drawn.

"Where different criminal acts constitute parts of the same transaction, they may be charged in the same count. There are many illustrations of this rule, among which are burglary and larceny. It is permissible to charge a burglary only, as that the accused broke and entered with intent to steal property, and also a larceny, as that he then and there stole the property described; and such an indictment will sustain a conviction for either of the crimes charged. 1 Bishop, Criminal Procedure, secs. 423, 439; *Breese v. State,* 12 Ohio St. 146; *State v. Brandon,* 7 Kan. 106; *State v. Hayden,* 45 Ia. 11; *State v. Brady,* 14 Vt. 353; *Commonwealth v. Tuck,* 20 Pick. (Mass.) 356; *Josslyn v. Commonwealth,* 6 Met. (Mass.) 236." *Aiken v. State,* 41 Neb. 263. See, also, *Lawhead v. State,* 46 Neb. 607.

The principle involved in the contention here made was discussed by this court in the following language: "It is next argued that the sentence cannot stand because the verdict is fatally defective. The point is not well taken. In a single count of the information defendant was accused of burglary—feloniously breaking into a freight car with intent to steal—and of larceny—stealing articles from the freight car. The charging of both criminal acts in a single count was permissible. *Lawhead v. State,* 46 Neb. 607. The larceny tends to show the criminal intent essential to burglary. The evidence is sufficient to sustain a verdict against defendant for either burglary or larceny. Under the instructions the jury were at liberty to acquit defendant entirely or to find him guilty of either felony." *Vickers v. State,* 111 Neb. 380.

It may be said that the cases cited by counsel for the defendant present solely the question of prior conviction or acquittal as involving former jeopardy. That point is not for consideration here. The facts in the present case, as-

suming counsel's statements to be true, invoke rather the application of the rule that where two or more complaints, or counts, for the same offense, or offenses, arising or included in the same transaction, are tried together, an acquittal as to one charge by reason of variance is no bar to a conviction on another charging the offense in a different way.  16 C. J. 243, sec. 380; *Commonwealth v. Baldwin,* 213 Mass. 238.

The next question presented by the record is the admission by the trial court, over objection, of the evidence of witness Stickrod as to a conversation between Stickrod and one Gebhardt who, with the defendant herein, was jointly charged with the commission of the offense.  The conversation in question occurred on the day following the burglary. The defendant being tried in this case was not present, and the evidence was introduced on his separate trial.  To the question eliciting this evidence the objection, "Objected to as incompetent," etc., was made by the defendant and overruled by the court.

It may be said in passing that this objection was sufficient in form and substance.  *State v. Magone,* 32 Or. 206; *Nightingale v. Scannell,* 18 Cal. 315; *Greenleaf v. Dubuque & Sioux City R. Co.,* 30 Ia. 301.

The objection being thus overruled, it was, under provisions of chapter 245, Laws 1915, section 8824, Comp. St. 1922, unnecessary to repeat this objection to further testimony of the same nature by the same witness in order to save error, if any, in the ruling of the court whereby such testimony was received.

It is to be noted that the gravamen of the offense charged in the present case is not conspiracy, but joint commission of burglary and larceny.  *Butler v. State,* 113 Ind. 5.

In reply to the question to which the above objection was made and overruled, witness Stickrod spoke as follows:

"Gebhardt came to the house and he says, 'How is everything?'  And I said, 'There was a big robbery up town last night.'  And he says, 'Whose place was it?'  And I says, 'Isaacson's.'  And with that my wife left the house and

went over to one of the neighbors, I think, and he says, 'We sure pulled a clean job.' And I says, 'Was you in on it?' And he says, 'Certainly.' I said, 'How did you get it?' And he said, 'Zediker went over the transom,' I forget which one he said helped him over, 'and went through and took the bar off Mr. Isaacson's back door and let them in.' I think he said Winslow went in, and he stayed on the outside watching Cal."

In this, and in subsequent admission by the court of all testimony of the same nature by this witness, the court erred. For it must be conceded that the essential principle of the hearsay rule is that for the purpose of securing the trustworthiness of testimonial assertions, and of affording the opportunity to test the credit of the witness, all testimonial assertions must be made in court and subject to cross-examination. True, declarations of a conspirator affecting his coconspirators made during the pendency of the criminal enterprise and in furtherance of its objects form an exception to the general rule. This exception may be stated in the following language:

"The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all; and is therefore original evidence against each of them. * * * And here, also, care must be taken that the acts and declarations, thus admitted, be those only which were made and done during the pendency of the criminal enterprise, and in furtherance of its objects. If they took place at a subsequent period, and are, therefore, merely narrative of past occurrences, they are, as we have just seen, to be rejected." 1 Greenleaf, Evidence (16th ed.) sec. 184a.

The substance of the above rule as thus expressed appears to be adopted in this jurisdiction. Speaking with reference to a charge of conspiracy this court has said: "Declarations made in pursuance of the object (of the conspiracy) are likewise admissible, but to be so they must

not be merely narrative of past occurrences or statements of future purposes; they must tend so directly toward the accomplishment of the alleged common object as to constitute a part of the *res gestae.*" *Farley v. Peebles,* 50 Neb. 723.

Nor do we find there is any repugnancy between this doctrine and the rule announced in *O'Brien v. State,* 69 Neb. 691, relied on by the state. In this case a statement of one of the joint defendants made for the purpose of affecting the sale while he was in possession of alleged stolen hogs, and engaged in selling the same, that "he had raised them at Elkhorn," was rightfully received against all the joint defendants, whether present or not, and this on the theory that the transaction before the court was a conspiracy to steal and sell hogs for the benefit of those engaged in the illegal enterprise, and that such conspiracy was pending until the sale had been made and the property divided. The undisputable inference carried by expression made use of in the case is that the statement was made in furtherance of the criminal design. Indeed, this element was expressed in the rule announced by this court, which is as follows: "The acts and declarations of a conspirator, during the pendency of the conspiracy, and in furtherance of the common purpose, are admissible in evidence against his associates." *O'Brien v. State,* 69 Neb. 691.

The rule above cited is generally adopted throughout all jurisdictions. On this subject the supreme court of the United States has laid down the following rule: "Doubtless, in all cases of conspiracy, the act of one conspirator in the prosecution of the enterprise is considered the act of all, and is evidence against all. *United States v. Gooding,* 25 U. S. 460, 469. But only those acts and declarations are admissible, under this rule, which are done and made while the conspiracy is pending, and in furtherance of its object. After the conspiracy has come to an end, whether by success or by failure, the admissions of one conspirator, by way of narrative of past facts, are not admissible in evidence against the others." *Logan v. United States,* 144 U. S.

263, 308. This rule, including the limitation that the declarations, to be admissible against those not present when made, must be in actual furtherance of the conspiracy, is further sustained by the following authorities: *State v. Gilmore*, 151 Ia. 618; *State v. Crofford*, 121 Ia. 395; *State v. Weaver*, 57 Ia. 730; *Ford v. State*, 112 Ind. 373; *People v. Parker*, 67 Mich. 222; *Chapman v. Blakeman*, 31 Kan. 684; *Payne v. State*, 10 Okla. Cr. Rep. 314; *State v. Beebe*, 66 Wash. 463; *State v. English*, 14 Mont. 399; *People v. Kief*, 126 N. Y. 661; *People v. McQuade*, 110 N. Y. 284; *Langford v. State*, 130 Ala. 74; *State v. Hickman*, 75 Mo. 416; *People v. Davis*, 56 N. Y. 95; *Willis v. State*, 67 Ark. 234; *People v. Moore*, 45 Cal. 19; *Commonwealth v. Thompson*, 99 Mass. 444. It follows that the conversation set forth herein was a mere narration of a past event, and not forming a part of, or connected with, anything then being done in furtherance of the object of the conspiracy. It is incompetent as against the defendant who was not present, and its introduction constitutes reversible error.

The last subject presented by the record for consideration is the alleged error of the district court in denying the application of this defendant for a change of venue. This court has said: "The Constitution guarantees to each citizen a fair and impartial trial when charged with crime, and it is the duty of the trial court to see that this guaranty is effective. If there is such a prejudice in the minds of the people of the county against the defendant, or such a firm conviction of his guilt of the crime charged against him that there is substantial and well-founded reason to believe that he cannot obtain a fair trial in the county, the Constitution requires that the venue be changed. Where these facts appear, there is no discretion in the matter. The trial court must grant the change. The discretion of the court is in determining these facts. It is, of course, a legal and not an arbitrary discretion. The determination of the trial court upon this question will not be disturbed, unless it appears from the record that its conclusion is wrong." *Lucas v. State*, 75 Neb. 11. See *Olsen v. State*, ante, p. 112.

Zediker v. State.

The facts and circumstances which make up the setting which surrounded this case at the time it was tried in the district court for Box Butte county, March 23, 1925, embrace the following: Alliance is a city with a census population in 1920 of 4,591. Hemingford has a population of 708. In the entire county 1,124 votes were cast in 1918. The rural population trades largely at Alliance. Two newspapers are published at Alliance with a circulation of over 3,000 copies weekly throughout the county. One newspaper is published at Hemingford. Burglary committed by the defendant herein on January 16, 1925, resulted in the charge of that crime against the defendant and the removal from office of the entire police force of the city of Alliance, also the offer of a reward of $1,000 for the apprehension and conviction of the guilty parties. The preliminary examination which was held on February 2, 1925, was largely attended. Witnesses at that hearing made statements sensational and damaging to the defendants, and extended accounts of these statements, and a verbatim report of a portion of the testimony appeared in the Alliance newspapers. Details of confessions of alleged accomplices previously made and the imprisonments suffered by defendant in Colorado and elsewhere are commented upon. The newspaper comment is made that punishment will soon be meted out to the guilty parties, and that their conviction will doubtless result in the breaking up of a dangerous band of lawbreakers who were supposed to have committed other crimes which "will bear investigation." Interested citizens of Alliance circulated a petition for the reinstatement of the chief of police. To this petition 420 signatures were appended. The discussion of the facts of the alleged crime which would naturally and inevitably be an accompaniment of such a proceeding disclosed that these 420 petitioners for the reinstatement of the chief of police were greatly incensed against the defendants and declare that said defendants "are guilty and should be sent over the road." The affidavits of the attorneys for the defendants are in the record and to the effect that, in preparing the showing for

a change of venue, they talked to a large number of people of Box Butte county, all of whom expressed the view that the defendants charged with the burglary were guilty, but who refused to make affidavits to support application for a change of venue on account of the strong sentiment against the accused; also, that the sentiment was universal and the prejudice against the defendants was so great in Box Butte county that it would be impossible for them to have a fair trial. A statement also appears in one of these affidavits of one of the attorneys that, in his long experience as a lawyer at the Nebraska bar, the affiant has never met such a hostile feeling against a defendant at any time as exists in this county in this case except Barrett Scott, the defaulting treasurer of Holt county, Nebraska. Approximately 75 affidavits are filed, in addition to those of defendant and defendant's counsel, fully substantiating and corroborating their statements. Opposed to these affidavits the state presents more than 400 affidavits, obtained in four days, general in language and negative in form, but strongly supporting the conclusion that there is no prejudice against the defendants in Box Butte county and that prisoners will receive a fair and impartial trial.

It does not affirmatively appear that any of the makers of the last-named affidavits were signers of the petition for the reinstatement of the deposed police officers.

One thing is undoubtedly true, and that is that, in a county with a poll list of 1,124 where 420 openly condemn the defendants, and in which approximately 500 have taken sides on the question for a change of venue, there is disclosed a condition of affairs which presents a very serious question for the consideration of this court. It is to be remembered that the 420 persons openly condemning the defendants and declaring them to be guilty of the crime charged are definite, ascertainable persons, and their names are appended to definite petitions. These facts are undenied by the state. In this view of the case, it would seem that the form of the showing herein presented is within the reason of the practice suggested in the case of *Simmerman*

*v. State,* 16 Neb. 615.   It is not supposed that people who had taken such a decided stand and had expressed such decided opinions as are attributed to the 420 signers of the petition for reinstatement of the deposed officers would voluntarily contribute to the assistance of the defendants whom they had already prejudged and condemned.   The affidavits filed by the defendants, in themselves, present a strong showing for a change of venue.   And, substantiated by the uncontradicted statements in the record as to the hostile attitude of the petitioners for the reinstatement of the Alliance officers, in connection with other facts and circumstances set forth, these affidavits fairly establish, after giving due consideration to the general negative statements contained in the state's counter showing that a fair and impartial trial could not be had by the defendants in Box Butte county, and constitute ample proof, not only to sustain the motion for a change of venue, but disclose a condition of affairs in view of which the denial of the application of the defendants for a change of venue by the district court constitutes an abuse of judicial discretion, for which the case must be reversed.   The case is therefore reversed and remanded for a new trial, with instructions to the district court to grant application for a change of venue.

REVERSED.

Note—Sec. (1) 14 R. C. L. p. 197; 3 R. C. L. Supp. p. 194; 5 R. C. L. Supp. p. 753; 31 C. J. sec. 321 (Ann.).   (2, 3, 4) 16 C. J. secs. 1283, 1314, 1330, 2198, 2201. (5) 27 R. C. L. p. 815; 4 R. C. L. Supp. p. 1767; 16 C. J. sec. 306.