IN RE ESTATE OF JOSEPH VANICEK.
LLOYD L. POSPISHIL ET AL., APPELLEES, V. ANNA VANICEK KEMP ET AL., APPELLANTS: IMPLEADED WITH JOSEPH F. VANICEK ET AL., INTERVENERS, APPELLEES.

17 N. W. 2d 477

FILED FEBRUARY 2, 1945. No. 31845.

*Coufal & Shaw,* for appellants.

*Lloyd L. Pospishil, W. B. Sadilek, Edward Asche* and *William H. Roether, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and WENKE, JJ.

PAINE, J.

This is an appeal from the district court for Colfax county in proceedings for the final settlement of the account of the executors of the estate of Joseph Vanicek. A daughter claims ownership, for herself and her two sisters, of five postal savings certificates as a gift from her father. The district court denied her claim, and held that said certificates were a part of the estate. From such finding the three sisters as claimants appeal.

The six errors relied upon for reversal may be summarized as follows: That the court erred in determining that the postal savings certificates were the property of the estate of Joseph Vanicek, and in directing their conversion into cash, and distribution thereof as a part of his personal

estate; that the court erred in holding that the postal savings certificates are not subject to transfer by a gift *inter vivos;* that the court erred in reversing its ruling excluding evidence of daughter's conversation with her deceased father, which was previously admitted; "The court erred in the decision that a gift inter vivos may not be proved by circumstantial evidence, ruling the gift must be established by direct evidence." "The court erred in its determination that the standard of the quantum of proof in a gift from parent to child, when no fraud or undue influence is shown, is the same as in a gift between strangers where fraud or undue influence is proved." "The court erred in holding the evidence is insufficient to establish the gift inter vivos." "The court erred in its general finding that none of the evidence as to gift and delivery given by Mamie Vanicek was admissible."

The record in this case discloses that Joseph Vanicek, a retired farmer, living alone in his own home in Schuyler, died testate on April 27, 1941. His estate consisted of farm lands, this house in town, and personal property, all having a value of about $25,000. The farm lands were divided between the two sons, and the three daughters were given the house in town and each a cash bequest of $2,000. In case the personal property failed to pay such legacies, the same were to be a lien on the farm land.

The only contest in this case is in reference to the ownership of five postal savings certificates, of the face amount of $2,200.

The testator's wife died in 1922, after which his youngest daughter, Mamie, continued to keep house for him until she married Elmer Kunkle February 24, 1927, and moved to a home about two blocks away, but continued to visit him daily, bringing him food, and with another sister assisted in doing housework for the father.

The son Joseph had lived in Oregon since 1935. The son Rudolph lived on his mother-in-law's farm, nine miles northeast of Schuyler, and visited his father only occasionally. The oldest daughter, Anna Kemp, lived in Schuyler, and

did regular washing for her father every two weeks for 75 cents. Carrie Strnad, the third daughter, lived in the country, did not drive a car herself, and could not visit her father as often as the other daughters, until his cancer took a serious turn, when she came more frequently.

In the case at bar, there is no dispute that after the death of the father the postal savings certificates were in the possession of his daughter Mamie, nor that she had received them from her father at his home, when she was there doing up his work on the evening of February 24, 1941.

She reached home about 6 o'clock and laid the postal savings certificates in the cedar chest in her bedroom. After 9 o'clock, when her husband came home from work, she testified, she "made a comment it was our wedding anniversary and I told him dad had given us the postal savings for three of us girls. * * * Q. And what did he say? A. He asked to see them because he had never seen postal savings. Q. What was done then, if anything. A. I went in the bedroom and brought them out and handed them to him while he was sitting on the day bed. Q. That is to say, you handed him these postal savings certificates and the envelope which encloses them and which this litigation is about, is that right? A. Yes."

There is evidence to the effect that, at a conference in the county court on May 22, 1941, William H. Roether, who was at that time an attorney for Joseph F. Vanicek, but is not now connected with the case, asked generally of the heirs sitting in the courtroom what the assets consisted of, and various notes were mentioned, and he then asked about postal savings, and testified: "Mamie Kunkle sat in one of the rear seats back of where I sat and stated 'Those are mine'."

Elmer Kunkle testified as to what happened at his home that evening after 9 o'clock when he got home. "Q. What then was done by you or Mrs. Kunkle? A. Well, my wife went in the bedroom and she got those postal savings and handed them to me in an envelope and I opened them up, looked at them and handed them to her."

Attempt was made to prove the details of the delivery

by the father to his daughter Mamie of the envelope containing these certificates at his home on the evening of February 24, 1941, and the trial judge permitted her to testify that her father handed her the envelope containing the postal savings certificates, although objection to the question and motion to strike out the answer were seasonably made, as follows: "Q. And the envelope in which the certificates were contained has been offered in evidence. Now did you see this envelope and these certificates in your father's hands at any time in his home on this afternoon when you were at the sink? A. Yes, when he handed them to me. Mr. Asche: Objected to and move that the answer be stricken for the reason that it is detailing a transaction had with a deceased person in a controversy involving a matter in which this witness has a direct legal interest and for which reason this witness is incompetent to testify. The Court: Overruled."

The trial court, after having the case under advisement for something over a year, decided that the answer above, stating the delivery of the certificates to the daughter by the father, was as much a transaction as detailing a conversation with the deceased father would be, and therefore that it should be stricken out. In this the trial court was correct.

Section 25-1141, R. S. 1943, reads as follows: "Where an objection has once been made to the admission of testimony and overruled by the court it shall be unnecessary to repeat the same objection to further testimony of the same nature by the same witness in order to save the error, if any, in the ruling of the court whereby such testimony was received." It has been so held in *Zediker v. State,* 114 Neb. 292, 207 N. W. 168.

If the question relates to the same identical transaction or conversation, and calls for testimony of the same nature, it is not necessary that the objection be repeated to save the error for the appellate court. *Triplett v. Western Public Service Co.,* 129 Neb. 799, 263 N. W. 229.

Anna Kemp, a sister of Mamie Kunkle, who came fre-

quently to help Mamie do the work, testified that Mamie told her that their father had given her the postal savings certificates for the three girls, also that Mamie stated in the county court, in answer to Mr. Roether's question, that "she had the postal savings for us three girls."

Joseph Kemp, son-in-law of the testator, and who is named as one of the executors, asked Lloyd L. Pospishil, an attorney, to draw the will. He found testator seated at a round table, with papers around him, and he stated that he wanted to make his will. Mr. and Mrs. Kemp went out in the kitchen and the door was closed, and he then proceeded with the execution of the will. Testator told of all his real estate, money in the bank, and notes, and the bequests to each. "Then I asked him if he had any postal savings and he looked up at me and said 'Yes, I had postal savings.' I didn't press him any further on the matter." Arthur E. Wolfe, a member of the board of county commissioners and a very close friend of years' standing, who had been a pallbearer at the funeral of testator's wife, visited the testator about a month before his death and asked about what he intended to do with his property, and testified, "He said he had given the land to the boys and the home in town and the postal savings and the money to the girls."

There is considerable evidence relating to the father destroying a note which his son Rudolph had given him for $1,989. Mamie Kunkle testified that on February 24, 1941, when she brought back some laundry she had done for her father, she put it away in the closet and then went to the sink to wash up some dishes, and at the kitchen stove she found pieces of a note of $1,989 which Rudolph had given his father, and which the father had just destroyed. She said: "He just walked over and saw me looking at it and he said that was a note of Rudy's he tore up."

Lloyd L. Pospishil, who drew the will, testified in reference to the examination of Rudolph Vanicek in the county court in this case as follows: "Q. Do you recall whether at that time he testified with reference to the character of the service that was rendered by Mamie Kunkle to her fath-

er? A. Yes. * * * Q. What, if anything, did he testify to there under oath with respect to her character, her loyalty to her parents and her loyal service to the parents during their lifetime?" Objection overruled. "A. He testified at length on cross examination when questioned regarding her good character and her integrity he admitted that he believed that she was honest and of good character and with respect to the work that she did for her parents, he admitted that she rendered service to them."

Therefore, in the case at bar, the evidence showing Mamie to be a creditable witness, it becomes a question of the sufficiency of the evidence of the gift *inter vivos* of the certificates to the three daughters, and not a question of the weight of the evidence, as there is no direct evidence in opposition thereto.

It might be noted in this connection that, in addition to the destruction by the testator of this note of Rudolph's of $1,989, a provision of the will reads as follows: " * * * and I hereby give, devise and bequeath to my said son Rudolph L. Vanicek, the rest and residue of my estate after the foregoing bequests and devises have been paid and satisfied in full."

We will next consider the claim that the postal savings certificates are not only nonnegotiable, but nontransferable, and therefore a gift of them would be invalid if not transferred according to the laws of the United States.

It has been held that "Gift of postal savings certificates in envelope, delivered by donor to donee, was completed when contents thereof passed to latter.

"That postal savings certificates were marked, 'non-negotiable—non-transferable,' did not affect validity of owner's transfer thereof to donee." *Estate of Diskin,* 161 Atl. 893 (105 Pa. Super. 519). See, also, to same effect, *Dietzen v. American Trust & Banking Co.,* 175 Tenn. 49, 131 S. W. 2d 69.

These decisions are in strict accord with the law itself, which says: "The final judgment, order, or decree of any court of competent jurisdiction adjudicating any right or

interest in the credit of any sums deposited by any person with a postal savings depository if the same shall not have been appealed from and the time for appeal has expired shall, * * * be accepted * * * as conclusive of the title, right, interest, or possession so adjudicated, and any payment of said sum in accordance with such order, judgment, or decree shall operate as a full and complete discharge of the United States from the claim or demand of any person or persons to the same." 39 U. S. C. A., sec. 767, p. 291. See, also, *United States v. Stewart,* 119 Fed. 2d 492.

" 'It is now well settled that a valid gift of non-negotiable securities may be made by delivery of them to the donee without assignment or indorsement in writing. This principle has been applied to notes, bonds, stocks, and deposit certificates and life insurance policies. * * * While a gift needs no consideration to support it, yet the conditions surrounding the donor and donee are frequently cited to interpret the intention of the parties, and, if they are competent to give and competent to receive, and the transaction is completed by a voluntary transfer of possession, it is regarded by law as an executed contract': *Hafer v. McKelvey,* 23 Pa. Superior Ct. 202, 204; * * * It is urged that this result does not follow in the present instance, since no title could pass until the proper tax stamps had been affixed, as required by the Act of June 4, 1915 * * * . This legislation does not affect the title of the holder of the stock to whom it has been transferred, though it makes the offender against its provisions liable to criminal prosecution: * * * ." *Connell's Estate,* 282 Pa. St. 555, 128 Atl. 503.

This court, in *In re Estate of Dayton,* 121 Neb. 402, 237 N. W. 303, had before it a case involving the delivery of certain bonds from a practicing physician to one who had been his faithful assistant and nurse for some 14 years, and who brought an action to establish her ownership to ten $1,000 bonds. This action was resisted by the daughter and son. The estate was upwards of $100,000 in value.

"A witness testified that she had been acquainted with the decedent and his family for many years and that she

has also been acquainted with the plaintiff for many years. This witness testified that the decedent told her about the bonds in suit and that he had purchased and registered them in the plaintiff's name. She also testified that the doctor informed her that he purchased the bonds as a gift to plaintiff in recognition of her long and faithful service as his assistant.

"Another witness, also a long time acquaintance of the Dayton family, testified that the doctor, in the course of a conversation with her, informed her that he had remembered the plaintiff's services in a former will, but that he was not satisfied with the provision he had made therein in her behalf, and that the bonds were therefore purchased and presented to her instead. And this witness also testified that the doctor informed her that when he died he did not want any trouble over his property. She also testified that Dr. Dayton then, in view of the foregoing, obtained a promise from her that, in event trouble did arise over his estate, she would relate the circumstance of this gift to the end that the plaintiff would receive the bonds intended for her."

The decedent kept these ten bonds in his safety deposit box, and collected the interest paid on them so long as he lived. Outside of keeping possession of the bonds, he made no attempt whatever to conceal the gift of the bonds to the plaintiff, and this court held: "The delivery of certain Nebraska state fair bonds may be established by the declarations of the donor, since deceased, that such bonds were a gift to the donee."

Another case, also by our court, involving a complete gift by the father, is *Novak v. Reeson,* 110 Neb. 229, 193 N. W. 348.

The legal inference arising from the transfer of personal property from a father to a child, who claims it as a gift *inter vivos,* is that such action of the father was a natural one, and less evidence is required to establish a gift to a child than to a stranger. See *Chapple's Estate,* 332 Pa. St. 168, 2 Atl. 2d 719, 121 A. L. R. 422; *Pierce v. Boston Five*

*Cents Savings Bank,* 129 Mass. 425, 37 Am. Rep. 371; *In re Morse's Estate,* 170 Mich. 114, 135 N. W. 1057; *Union Trust & Savings Bank v. Tyler,* 161 Mich. 561, 126 N. W. 713; 39 Am. Jur., sec. 97, p. 742.

"One of the essential elements of a gift is the intention to make it. A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential element of the gift, and this contention must be inconsistent with any other theory." *Hild v. Hild,* 135 Neb. 896, 284 N. W. 730.

In the case of *Henley v. Live Stock Nat. Bank,* 127 Neb. 857, 257 N. W. 244, this court held:

"To make a valid and effective gift *inter vivos,* there must be an intention to transfer title to the property, as well as a delivery by the donor and an acceptance by the donee.

"A gift *inter vivos* does not differ in its essential elements from a gift *causa mortis,* except that in the latter the survival of the donor may defeat the gift." See, also, *Ralston v. Marget,* 138 Neb. 358, 293 N. W. 124; *Smith v. Pacific Mutual Life Ins. Co.,* 130 Neb. 501, 265 N. W. 534; *First Nat. Bank v. Thomas,* 151 Md. 241, 134 Atl. 210, 47 A. L. R. 730.

It is a well-settled doctrine that all of the facts necessary to constitute a valid gift *inter vivos* may be inferred from subsequent declarations of the donor, which are in the nature of admissions by him against interest. Such statements are admissible in evidence as tending to show that he had given the property to the donee. See annotation, 105 A. L. R. 398; *Reid v. Colcock,* 1 Nott & McCord (S. C.) 592, 9 Am. Dec. 729; *Jones v. Ewart,* 143 Neb. 717, 10 N. W. 2d 708.

A gift *inter vivos* does not require positive proof of a witness who saw the delivery, but it may be inferred from circumstances which clearly and satisfactorily show a delivery. See 28 C. J., sec. 83, p. 678.

It is generally held that the transfer *inter vivos* should be sustained if all the facts and circumstances show the de-

sire and the act completed, whatever may have been the method adopted. (See discussion by Professor Mechem in 21 Ill. Law Review, 341.)

In the case at bar, the postal savings certificates were transferred by delivery to the daughter, Mamie Kunkle, by her father as a gift *inter vivos*. Mrs. Kunkle had legal possession of these certificates at the time of the death of her father. One of his friends of long standing said the father told him that he had given the postal savings to the girls. The United States supreme court has held that the final order of any court of competent jurisdiction will be recognized as transferring the title to such certificates even though such certificates are marked nontransferable.

The testimony of Lloyd L. Pospishil, the scrivener, is that when he was in the act of drawing his last will and inquired if he had postal savings certificates, the testator replied, "I had postal savings," indicating clearly that he had none to be mentioned in his will.

We have reached the conclusion that the judgment of the trial court is wrong, and that a judgment should be entered in accordance with this opinion.

REVERSED, WITH DIRECTIONS.