### COLLINS v. JORDAN et.

Common Pleas Court, Miami County.

No. 33606.   Decided June 14, 1949.

McKeever & Monahan, Wapakoneta, for Collins.
James H. DeWeese, Piqua, for Jordan.

## OPINION

By PORTER, J.

This is an action for a declaratory judgment. The plaintiff, Henry Collins, has in his possession the bonds in question, all of which are series G U. S. Government bonds as follows:

M1460977G dated April 1943 in the amount of $1000.00
M925646G dated Oct. 1942 in the amount of 1000.00
M1675783G dated Sept. 1943 in the amount of 1000.00
D1410306G dated Sept. 1944 in the amount of 500.00
D849498G dated Feb. 1944 in the amount of 500.00
D1407756G dated June 1944 in the amount of 500.00
D1411427G dated Nov. 1944 in the amount of 500.00

These are registered in the name of C. Ray Jordan, now deceased, and are payable on death to his wife, who predeceased him. In his petition the plaintiff maintains that the bonds were given to him by C. Ray Jordan, "during his lifetime," but whether the alleged gift was inter vivos or causa mortis is not specified.

To support such a gift clear and convincing evidence is required. **Bolles v. Toledo Trust Co., 132 Oh St 21, 4 N. E. 2d 917.** The evidence has not been of that character.

As far as the proof showing that there has been a gift causa mortis there has been a complete failure. I think that all it is necessary to note in this connection is that nowhere in the record is it disclosed that at the time of the delivery of the bonds, April, 1948, by C. Ray Jordan to the plaintiff was C. Ray Jordan under an apprehension of death. It also appears in the record that C. Ray Jordan continued after the delivery to receive the interest (R. 16) and this was a retention of control inconsistent with a gift causa mortis. Furthermore, a gift causa mortis is conditional. "It is not complete during the donor's life, but takes effect only upon his death. It may be revoked before the donor's death. Since it is made in contemplation of death, there is a defeasance of the gift if the danger of death passes without the donor dying." **20 O. Jur., page 45.** The alleged gift here took place April, 1948. C. Ray Jordan died March 31, 1949. Certainly even if there was an apprehension of death on the date of the gift, it was not made in last sickness, "by a donor who is in peril or apprehension of death." Or if he was, that extremity passed and there was a defeasance.

I dwell on this because there are some cases in other jurisdictions in which a gift causa mortis of registered bonds such as those involved in this case has been recognized. In re Borchard's Estate, Sur., 1942, 179 Misc. 456, 38 N. Y. S. 2d 987; Dietzen v. American Trust & Banking Co., 175 Tenn. 49, 131

S. W. 2d 69. The reasoning of these holdings is that the treasury regulations do not forbid testamentary dispositions and gifts causa mortis are much the same.

The plaintiff's claim that there was a gift inter vivos has not been proved by clear and convincing evidence either. It is necessary to recall that the essential elements of such a gift are:

1. A **present intention** to transfer the title and right of possession to the donee, and,

2. A delivery by the donor to the donee of the subject matter of the gift to the extent practicable or possible.

Next, it is necessary to look at the record in the light of this rule. When this is done, it is seen at the most C. Ray Jordan wanted Henry Collins to have the bonds "after he died" (R. 20, 21, 41, 42). The nature of the gift is therefore seen to be as an ineffectual testamentary disposition.

However, in the interest of the finality of this decision, the court has assumed that the necessary elements of a gift inter vivos were present, and has examined the cases which hold the answer to the question—Is it possible to make such a gift of a government bond of the type in question?

The exact question hasn't come under discussion in any Ohio case of which I am aware. However, the nature of such bonds as contracts between the federal government and the purchaser is clearly established by the line of cases involving the right of the person designated as beneficiary to become the absolute owner on the death of the purchaser. **In re Di Santo's Estate, 1943, 142 Oh St 223, 51 N. E. 2d 639**; Laufersweiler v. Richmond, Probate Court, 1942, 8 Ohio Supp. 76.

It was observed by the Supreme Court in the Di Santo case, **142 Oh St at page 231, 51** N. E. 2d at page 642, that the terms of the treasury circulars are specifically made a part of the contract as if they were fully set out in the bond form. This is followed by this statement:

"The bonds in question are not transferable. The identity of the owner as well as that of the payee is to be determined according to the tenor of the bond."

The opinion concludes with the statement: "Being of the opinion that each of the bonds in question evidences a contract between the United States of America and the registered owner for the benefit of a third person, the designated beneficiary, the judgment of the Court of Appeals should be and hereby is affirmed."

Before discussing selected cases arising outside Ohio which do involve the question, it is helpful to note that the authority for the issuance of these bonds is found in 31 U. S. C. A. §757c. Pursuant to this statutory authority, the Secretary of Treasury

has promulgated certain regulations governing the transfer of such bonds. One is 315.11 which reads as follows:

"Not transferable. Savings bonds are not transferable and are payable only to the owners named thereon, except in case of the disability or death of the owner, authorized re-issue, or as otherwise specifically provided in this sub-part, but in any event only in accordance with the provisions of these regulations." C. C. H., Federal Banking Law Reporter, Vol. 1, page 8506.

As previously noted, the bonds in question are Series G bonds. Examination of circular No. 530, Vol. 1, C. C. H. Federal Banking Law Reporter, page 8501 et seq., shows that it applies to all United States savings bonds including E, F and G. I mention this because E bonds were involved in the first selected case to be discussed, one which involves a gift causa mortis (but the reasoning of the opinion is applicable to a gift inter vivos). It is Fidelity Union Trust Co. v. Tezyk, a case decided by the New Jersey Court of Errors and Appeals September 12, 1947 and reported in 140 N. J. Eq. 474, 55 A. 2d 26, 173 A. L. R. 547.

In that case on February 5, 1945, the decedent, in whose name E bonds were registered, told the donee's mother that he wanted to see her daughter. Mother and daughter went to his apartment and he gave the mother a brown envelope and said, "This is going to help you send your son through school." The donee kept these bonds until after the death of the decedent, on February 10, 1945. The question presented was whether or not E war savings bonds can be subject of a gift causa mortis when no further action is taken beyond a handing over to the donee with an expression of intention that ownership shall be transferred. The court observed:

· "This is a novel question in this jurdisdiction, and the vast holdings of bonds of this type make the question one of serious import."

It points out further that the cases from various jurisdictions are consistent in holding that such bonds represent a proper pledge of federal credit; that the legislation providing for such bonds properly makes them subject to regulations of the Treasury Department; and that such regulations must be recognized and given the force of federal law by the courts of the various states. It therefore considered the real question to be whether the federal regulations affecting bonds of this type impose conditions which support or prohibit a gift of such bonds causa mortis.

Regarding transferability, the regulation then in force was 315.8 which reads as follows:

"U. S. Savings Bonds are not transferable and are payable only to the owners named except in the case of disability or death of the owner or as otherwise specifically provided herein, but in any event only in accordance with the provisions of these regulations. * * *"

The court observed that such bonds have a peculiar status, "for they are intended for issue in every state, are backed by the credit of the federal government, and are offered for sale subject to conditions which it must be assumed were intended to enhance the borrowing power of the federal government. Conversely, it reasonably cannot be assumed that these conditions, made known to purchasers throughout the country, were intended to be subject to rules pertaining to the devolution of personal property in the various states, or to varying interpretations which might be accorded by the different state courts."

The court cited section 315.2 which provides that U. S. savings bonds will be issued only in registered form. The form of registration used must express the actual ownership of and interest in the bond and, except as otherwise provided in these regulations, will be considered as conclusive of such ownership and interest. They observe that if gifts causa mortis of such bonds are held valid without re-issue and registration, then to that extent the federal regulations are set aside or made subject to state rules and that individuals, demonstrating circumstances of varying equity, may negate the conditions under which federal credit was pledged, and registration of these bonds no longer could be "considered as conclusive of * * * ownership and interest."

Of special interest is the following observation of the court:

"It is possible that the real intentions of the donor would be achieved through upholding the validity of gifts causa mortis of E bonds. It can be argued that such gifts would not violate the apparent nature of these bonds and make them subject to barter and sale on the open market. At the same time, it seems quite clear that the conditions under which these bonds were issued makes registration the sole evidence of ownership with the one necessary exception of recognizing formal procedures for the administration of estates. If any further exception is to be made for gifts causa mortis, then this action should be taken by the federal government, so that there might be a consistency in the terms of these obligations throughout the states."

Next consideration is given to Marshall v. Felker, 1945, 156 Fla. 476, 23 So. 2d 555, 161 A. L. R. 167, in which a gift inter vivos of United States war savings bonds was sustained. Al-

though the regulations governing the issuance provided that no judicial proceeding would be recognized if it gave effect to an attempted voluntary transfer inter vivos of a bond, the court did not construe this as making unlawful such a transfer, as between a donor and donee. It added that whether such a provision would become material in a controversy between the donee and the government was a question which was not before them. According to the editors of A. L. R., "It was the view of the court that the general rule that every species of personal property of which the legal or equitable title can pass by delivery, actual or constructive, may be the subject of a valid gift, either inter vivos or causa mortis, is applicable to 'not transferable' savings bonds issued by the federal government so long as the federal statutes, rules and regulations under which they were issued, contain no express prohibition against the transfer of such instruments by gifts."

The next case to be considered is that of Brown v. Vinson, decided by the Supreme Court of Tennessee in 1949, 188 Tenn. 120, 216 S. W. 2d 748, 749. In my judgment this is of special interest because the facts before the court were somewhat similar to those before this court and because of the careful analysis of the applicable authorities both pro and con by Justice Tomlinson.

The facts were that the owner of E bonds folded them one over the other and on the outside bond penciled the following: "To Leatha Vinson and (Oik) Vinson Bob Brown," and thereupon delivered them to Vinson and wife as a gift inter vivos. Brown died a few weeks later. This was a suit between the administrator of his estate and the grantees in replevin.

The court noted that on the face of each bond it was stated that the bond was issued pursuant to treasury department circular No. 653 and that it was not transferable except as provided in said regulations and is payable only to the registered owner.

The court noted also that the circular referred to contained a regulation that bonds of series E will not be transferable and will be payable only to the owner named thereon except in case of death or disability of the owner or as otherwise specifically provided in the regulations governing savings bonds, and in any event, only in accordance with said regulations. Accordingly, after they are duly issued, they may not be sold, discounted or disposed of in any manner other than as provided in the regulations governing savings bonds and except as provided in said regulations, and the Treasury Department will recognize only the described owner during his lifetime and thereafter his estate or heirs.

The court first noted that under Tennessee law, a gift inter vivos is not effective until the complete dominion and control of the gift is surrendered by the donor and acquired by the donee. (The same is true in Ohio.)

In other words, the court concluded that the donor did not do everything possible to give the donee complete dominion over the gift because he did not have the bonds reissued in the name of the donee which he could have done under the regulations—or he could have named them as beneficiaries.

The court noted with approval the New Jersey case of Fidelity Union Trust Co. v. Tezyk, supra, wherein the question before the court was whether or not such bonds can be the subject of a gift causa mortis— and wherein it was concluded that it is clear that the conditions under which such bonds were issued make registration the sole evidence of ownership with the one necessary exception of recognizing formal procedures for the administration of estates. The reasoning of the New Jersey Court has already been set forth in this opinion.

Consideration is next given to the Kentucky case of Moore's Administrator v. Marshall, 302 Ky. 729, 196 S. W. 2d 369, 372, 168 A. L. R. 241, wherein it is called to attention that the act of Congress authorizing the issuance of these bonds and the regulations of the treasury pursuant thereto are a part of the contract and restated the purposes called to attention in the Tezyk case. It noted that the Kentucky court, with reference to nontransferability, said:

"The non-transferability of the certificates was a protection and a security for both the government and the registered owner thereof, and this court has no power to waive this benefit on behalf of the government. * * *" The court notes that the Kentucky court made this further pertinent observation:

"A holding that these United States Savings Bonds are transferable by gift inter vivos would defeat the purposes of the Act of Congress and the Treasury regulations, and would open the door for evasion of plainly expressed restrictions on transfer."

It further quotes with approval a pertinent excerpt from a Pennsylvania case as follows:

"That there should be one law regulating U. S. bonds is a matter of necessity and this must be the law of the Federal Government which issues the bonds." [Ruben v. Ruben, 95 Pittsb. Leg. J. 65.]

The court recognizes that the Florida case of Marshall v. Felker, 156 Fla. 476, 23 So. 2d 555, 161 A. L. R. 167, holds that such bonds may be the subject of a valid gift inter vivos for the reasons mentioned herein where that case is discussed.

The Tennessee court states that it is compelled to disagree with the conclusion of the Florida court and notes that it overlooks the clear purpose in the making of the regulations under which the bonds were issued and defeats those provisions though they are in fact a part of the contract. It further notes that if the donee cannot collect the debt evidenced by the paper called a bond, then, "it seems clear that the decision in the Florida case does not meet the requirements of our rule that a gift inter vivos must be complete." Since the rule in Ohio is also that a gift inter vivos must be complete, this reasoning applies with equal force to the case before the court.

The Tennessee court also discusses the Dietzen case which is mentioned herein as authority for the proposition that gifts causa mortis of such bonds are okay on the reasoning that such gifts, while not testamentary in character, nevertheless bear some resemblance thereto in that it is a disposition of property in contemplation of death; and that under the fair interpretation of the regulation there is nothing therein inconsistent with the view that such bonds are transferable by will and by analogy by gifts causa mortis. They conclude that an attempted gift inter vivos, without registration, etc., in the name of the donee, is not effective, since it is a violation of the regulations and provisions under which these bonds were issued. It is stated that to hold otherwise would be to ignore the regulations which are a part of the law under which such bonds were issued and would hinder the accomplishment of the purposes intended by those regulations and lead to confusion in the disposition of the great amount of these bonds issued in every one of our states.

This court adopts as its own the reasoning of the New Jersey and Tennessee Courts and concludes that a bond of the type in question is not a proper subject of a gift inter vivos.

Accordingly, it is held on the issue joined in favor of the defendant and the prayer of the petition is denied. Counsel for the defendant will please prepare an entry carrying this decision into effect and submit it for approval.

Supplemental Decision

At the time the decision filed herein was written, the court had been cited to the so far unreported **In re Estate of Sibert**, No. 995 Court of Appeals of Allen County **(60 Abs 113)**. It had been called to the court's attention by the attorneys for the plaintiff. Possibly some mention should have been made of it in the decision. Since writing the decision, a copy of the opinion has been furnished to me and the holding is such as to require this supplemental decision.

The case was decided June 29, 1950. It was an appeal from the Probate Court of Allen County which held that the donees of certain registered United States Savings Postal Certificates might keep as their respective property though registered in the name of the decedent. According to the court the evidence showed that the decedent, a sister of the donees, was ill with cancer for several years before her death and she died from this illness on February 1, 1947. During her lifetime she was the owner of the postal saving certificates in question, and at the time of her death two of these were in the possession of each sister. They testified that in the latter part of August 1946 upon their sister's return from the hospital, they were given to them and that at the time the sister knew that she had cancer and could not recover.

The court stated the claim of the administrator to be that the title to these certificates did not and could not pass to the respondents, under the admitted facts in evidence. "That these certificates are non-negotiable and non-transferable and could not be the subject of a gift by delivery only, during the lifetime of the decedent." The court observed further that it was unable to find where this question had been heretofore considered by the courts of Ohio but that it had been passed upon in the courts of other states. However, the only case outside Ohio discussed was that of Marshall, Executor v. Felker, the Florida case reported in 156 Fla. 476, 23 So. 2d 555, 161 A. L. R. 167. They quoted at length from the opinion in that case because, as stated, the views expressed therein were "in accord with our view of the law governing the case at bar." They noted that other cases cited by counsel involved the transfer of war savings bonds which "are governed by different rules and regulations than govern postal savings certificates." However, a reference to the decision shows that in the Florida case both postal saving certificates and war savings bonds were involved. Without distinguishing between the two, the court in that case said [156 Fla. 476, 23 So. 2d 557]:

"It is the general rule that every species of personal property of which the legal or equitable title can pass by delivery, actual or constructive, may be the subject of a valid gift, either inter vivos or causa mortis. 28 C. J., Gifts, §§38, 39, 114; 38 C. J. S., Gifts, §§30, 31, 90; 24 Am. Jur., Gifts, §66. The rule applies to 'nonnegotiable' or 'nontransferable' postal savings certificates and savings bonds issued by the federal government so long as the federal statutes, rules and regulations under which they are issued contain no express prohibition against the transfer of such instruments by gift. In re Diskin's Estate, 105 Pa. Super. 519, 161 A. 893; In re Vanicek's

Estate, 145 Neb. 531, 17 N. W. 2d 477; Blair v. Kirchner, 319 Ill. App. 348, 49 N. E. 2d 292; Dietzen v. American Trust & Banking Co., 175 Tenn. 49, 131 S. W. 2d 69.

"We find nothing in any of the rules or regulations brought to our attention which will prevent an inter vivos gift of the securities in question. Indeed, Section 1624 of the Postal Laws and Regulations seems to be clear to the effect that if the rights and interests of a donee beneficiary in postal savings certificates have been adjudicated by a court of competent jurisdiction payment will be made by the United States Post Office Department upon production of a judgment or decree containing such adjudication. And though section 315.151 of the Regulations governing the issuance of United States savings bonds provides that no judicial proceedings will be recognized 'if they would give effect to an attempted voluntary transfer inter vivos of the bond' we do not construe this provision as making unlawful such transfer, as between a donor and donee. Whether the quoted provision would become material in a controversy between the donee and the government is a question not before us, this being a suit between the donee and the executor of the decedent. Moreover, the fact that the donee may experince some difficulty in procuring the proceeds of the securities when they are presented to the issuing agency for payment is also outside the issue. But whatever the outcome of her controversy with the federal government may be when the bond is presented for reissue or payment, it is clear to us that as against the executor of the decedent she may acquire the bond by gift inter vivos, and with it whatever value it may possess in her hands."

The Court of Appeals of Allen County gives the impression that it makes a great difference as to whether or not the nontransferable securities are postal savings certificates or war bonds, but the case on which they place chief reliance makes only slight, if any, such distinction (though it could have).

The case may be, therefore, authority for the position of the plaintiff that nontransferable bonds are the proper subject of a gift inter vivos. In fact it is, whether it was intended to be or not. However, it is not being followed because it is felt to be wrong.

It is believed to be wrong because the reasons which the Florida Court give in support of its holding just do not stack up when compared to the reasons advanced by those courts which hold such nontransferable and nonnegotiable bonds not subject to gift by delivery.

Selected cases involving the question are treated editorially in 161 A. L. R. 170 et seq. It is only necessary to appreciate

the statement just made to read the decision in the Florida case and then read the decision of the Tennessee Supreme Court in the case of Brown v. Vinson, 188 Tenn. 120, 216 S. W. 2d 748.

## ON MOTION FOR NEW TRIAL

There is for decision a motion for a new trial, in opposition and in support of which the parties have furnished helpful briefs.

The plaintiff has strongly urged that the Court was wrong in finding that the evidence did not clearly and convincingly show that there was a "present intention" on the part of C. Ray Jordan to transfer the title and possession of the bonds to him. Such a present intention is necessary in order for the plaintiff to establish that there was a valid gift inter vivos. The record has been combed for all the testimony pro and con on this question.

In support of the plaintiff's position the chief fact is that it was established by three witnesses that Mr. Jordan did deliver the bonds in question to the plaintiff. He turned them over to him. According to Mrs. Collins, at the time he did so, he said, "Henry, they are yours," (R. 11). At R. 11 and 14 the same witness said, "Yes, he [the decedent] said if it was all right with the mister he would like to have the interest for a little bit of pin money. * * * He said if it was all right with the mister. The mister said he could do with it as he pleased."

Mr. Collins testified that when the decedent delivered the bonds to him he said, "Here, Henry, I will give you this for what you have done for me."

Against the plaintiff's contention is the testimony of Mr. Myers that the decedent said: "Henry, I want you to have these after I am dead. You put them away so you got them," (R. 20, 21); and the testimony of Mr. Collins that the decedent said, "Henry, there is some interest coming due on the bonds and I will keep that for pin money," (R. 26); and the testimony of Mr. Collins at R. 41, 42: "Q. I believe you testified that night Ray told you that he wanted you to have these bonds after he died. A. That's right."

In its former decision too much weight was given by the Court to the evidence that the donor retained the interest and too little weight was given to the evidence of three witnesses that the bonds were delivered to the donee.

In support of his motion for a new trial, the plaintiff has cited the Court to the case of **State ex rel. Shaffer v. Kuthy, 47 Abs 14, 145 Oh St 516, 71 N. E. 2d 734,** in which it is held that the fact that the donor of certain certificates of stocks continues to receive dividends and exercise his voting privileges thereunder, subsequent to the delivery of said certificates as a gift to the donee, does not constitute such a retention or control and dominion by such donor as will make such gift conditional and incomplete.

In the light of this, and on reconsideration of all the testimony regarding "present intention," the Court reverses its former position and finds that the evidence is clear and convincing that there was a present intention on the part of the donor, C. Ray Jordan, to transfer the title and right of possession of the bonds in question to the donee, the plaintiff.

However, the court still feels that nontransferable bonds are not the proper subject of a gift inter vivos. Hence, the change in the position of the court on "present intention" does not affect the verdict already reached and the motion for a new trial is overruled.