María Aldea y Díaz, demandante y apelante, *v.* Paulina Jesusa, Lucía Enriqueta, Marcos Daniel, Cristóbal Manuel, Belén Ana y Manuel Wenceslao Tomás y Piñán, y Marcos Tomás Caneja, también nombrado Marcos Tomás Díaz Caneja, en su carácter de heredero de Santiago Sabino Tomás y Piñán, demandados y apelados.

Núm. 7000.—*Sometido:* Marzo 9, 1937. *Resuelto:* Junio 18, 1937.

*Carlos D. Vázquez,* abogado de la apelánte; *Dubón & Ochoteco,* abogados de los apelados.

El Juez Presidente Señor del Toro emitió la opinión del tribunal.

Se trata de una reclamación de quinientos dólares por cierto derecho de *homestead.* El pleito se inició en una corte municipal decidiéndose en favor de la demandante y luego se resolvió en apelación en una de distrito en su contra. La demandante es la viuda de Fernando Pozada, dueño con ella de la finca en la cual se alega que se constituyó el derecho, y los demandados son los herederos de Ana Piñán, acreedora hipotecaria que ejecutó la finca sin satisfacer el derecho.

Sostiénese sustancialmente en la demanda que Fernando Pozada y su esposa la demandante adquirieron en 1907 en Puerta de Tierra un solar con casa de dos plantas de concreto marcada con el número 84 de la Calle de San Agustín; que en la finca constituyeron su hogar seguro viviendo la demandante en ella con su esposo y fallecido éste en 1925 con sus hijos y nietos hasta que se vió obligada a desalojarla a virtud del procedimiento hipotecario sumario instado por los demandados; que en abril 4, 1925, la demandante y su esposo tomaron a préstamo a la causante de los demandados Ana Piñán tres mil dólares y para garantir su devolución hi-

potecaron la finca sin renunciar su derecho de hogar seguro, siendo en el momento de la constitución del gravamen Fernando Pozada jefe de familia y con su familia ocupando la indicada finca; que' la Señora Piñán falleció en 1925, adjudicándose a sus herederos los demandados el crédito hipotecario que vencido y no satisfecho fué por ellos ejecutado vendiéndose la finca en pública subasta a F. Rivera Collazo, en agosto 30, 1928, por $4,100, sin que los demandados pagaran a la demandante los quinientos dólares importe de su derecho de hogar seguro.

Contestaron los demandados negando que la demandante tuviera constituído su hogar seguro sobre la casa descrita en la demanda y alegando que dicha casa y "otra más al fondo del mismo solar" fueron construídas por su esposo en sustitución de la que en 1907 comprara a José Fernández y que destruyó un incendio con tres mil dólares que tomó prestados a Antonio Gayol, préstamo que garantizó con hipoteca para cancelar la cual tomó prestada otra suma igual a la causante de los demandados que quedó también garantizada con hipoteca y fué la que al cobrarse dió origen a la venta de la finca en pública subasta.

Los demandados reprodujeron en su contestación sus excepciones a la demanda de falta de hechos, de prescripción y de defecto de parte demandada.

Fué el pleito a juicio. Ambas partes introdujeron su evidencia y la corte por los motivos que dejó consignados en una relación del caso y opinión declaró la demanda sin lugar, con las costas a la demandante. Dijo la corte sentenciadora:

"La hipoteca que dió lugar a dicho procedimiento ejecutivo fué constituída por escritura núm. 15 de 4 de abril de 1925 ante el Notario don Luis E. Dubón. De dicha escritura no aparece que los deudores hipotecarios o sea la demandante y su esposo ahora difunto renunciasen al derecho de *homestead* que pudiesen tener sobre la finca hipotecada. Sin embargo, de dicha escritura aparece que en el mismo acto y por el mismo documento se canceló una escritura de hipoteca por cantidad igual a la constituída a favor de la causante

de los demandados, o sea $3,000 de principal, constituída dicha hipoteca cancelada por dicho documento a favor de don Antonio Gayol y Martínez, y por escritura de 15 de marzo de 1922 ante el Notario don E. H. F. Dottin, debidamente inscrita en el Registro de la Propiedad. No aparece de la evidencia que al otorgarse la hipoteca a favor de Gayol, se renunciase al derecho de *homestead* pero aparece · de la declaración del demandado Marcos Tomás Caneja, que al constituirse la hipoteca a favor de su esposa doña Ana Piñán y Acevedo, causante de los demandados, el Sr. Pozada entonces dueño de la finca hipotecada, le manifestó que aquella hipoteca se constituía para cancelar la de Antonio Gayol y Martínez, y que esta última o sea la de Gayol se había constituído con el fin de levantar fondos para la construcción de la casa hipotecada. .

"Esta declaración de Marcos Tomás Caneja fué objetada por la demandante, basando su objeción en la jurisprudencia sentada por nuestro Tribunal Supremo en el caso de *Wilcox* v. *Axtmayer*, 23 D.P.R. 343, declarándose sin lugar la objeción por entender la corte que la jurisprudencia establecida en dicho caso no es aplicable al presente por no hallarse este caso comprendido dentro de las disposiciones de la ley interpretada en el caso de *Wilcox* v. *Axtmayer*, supra. En el presente caso no se trata de una acción establecida por los herederos o causahabientes de un finado. La acción establecida lo fué por la demandante, por su propio derecho y tratándose de una admisión hecha en su contra por su predecesor en título es perfectamente admisible de acuerdo con lo establecido en el caso de *Falero* v. *Falero*, 15 D.P.R. 122.

"La declaración de Marcos Tomás Caneja está corroborada por la circunstancia de que la hipoteca a favor de su esposa fué constituída en el mismo documento en que se canceló la hipoteca de Antonio Gayol y Martínez, apareciendo además de dicha escritura que la casa originalmente comprada por Pozada y su esposa, la demandante, fué destruída por un incendio, habiéndose adquirido por edificación que hicieron los esposos Pozada-Aldea la casa que actualmente existe y que fué objeto de las dos hipotecas a que hemos hecho referencia.

"Quedando establecido el hecho de que el dinero procedente del préstamo con hipoteca de Antonio Gayol fué invertido en la edificación de la casa hipotecada, y habiéndose probado además que con el dinero recibido de doña Ana Piñán, causante de los demandados, se canceló la hipoteca de Gayol, réstanos determinar si bajo tales circunstancias la demandante tiene derecho a reclamar de los demandados el *homestead* objeto de este pleito.

"No hay duda alguna de que la demandante y su esposo no hubieran podido dentro de los términos de la Ley de *Homestead* reclamar cantidad alguna por dicho concepto al anterior acreedor hipotecario, Sr. Gayol, toda vez que su crédito fué constituído para garantizar cierta cantidad de dinero que se invirtió en la construcción de la casa. Si como aparece de la evidencia el dinero prestado a la demandante y a su esposo por la causante de los demandados fué invertido en pagar el crédito de Gayol, tenemos entonces que la causante de los demandados se subrogó en los derechos de Gayol, de tal manera que si contra él no podía reclamarse el derecho de *homestead*, tampoco podía reclamarse contra los demandados. Sobre este particular ha dicho nuestro Tribunal Supremo:

" 'El estatuto nuestro sobre la materia dispone que el derecho de hogar seguro sólo podrá dejar de reclamarse cuando la ejecución de la propiedad sobre la que está constituído proceda a virtud de la falta de pago de las contribuciones impuestas a la misma, del precio de su compra, o de la responsabilidad incurrida para mejoras que en ella se hicieren. En tal virtud, sólo hubiera podido tener éxito la defensa del demandado si se hubiera demostrado que la hipoteca cancelada con parte del dinero que prestó a la demandante, se había constituído para hacer frente a todas o a algunas de las indicadas obligaciones, y tal demostración no se hizo.' *Ruiz* v. *Barreto,* 46 D. P. R. 369, 373.

"*A contrario censu,* habiéndose demostrado en este caso que el dinero prestado por la causante de los demandados fué invertido en cancelar la hipoteca de Gayol, tenemos que concluir que tampoco puede reclamarse el derecho de *homestead* contra dichos demandados."

No conforme la demandante apeló para ante este tribunal. Señala en su alegato cinco errores cometidos a su juicio por la corte sentenciadora al permitir declarar al demandado Marcos Tomás Caneja; al declarar probado que la hipoteca de Gayol se pagó con el dinero tomado a la causante de los demandados; al resolver que la demandante no hubiera pudido reclamar su derecho de hogar seguro de Gayol; al decidir que por el mero hecho de que la hipoteca de Gayol se pagara con dinero tomado a préstamo a la causante de los demandados quedó dicha causante en la misma posición que Gayol no pudiendo prosperar tampoco contra ella la re-

clamación, y al dictar su sentencia contraria a la prueba y a la ley.

■ Por el primero de los errores señalados se levanta una interesante cuestión de derecho. Ordena la ley que se invoca:

"Sección 3.—En las demandas por o en contra de los albaceas testamentarios, administradores o tutores en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta Sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste." Sección 3 de la Ley para prescribir quiénes son testigos hábiles, aprobada en mayo 10, 1904, Leyes de 1904, p. 121.

Es cierto que no se trata aquí estrictamente de una acción por o en contra de albaceas, administradores o tutores o de una demanda por o en contra de los herederos y representantes legales de un finado suscitada a virtud de transacciones habidas con éste, pero no puede negarse que el pleito se inició por la viuda que alegando haber continuado ocupando la finca como su hogar seguro a la muerte del esposo que con ella constituyera dicho hogar, basa en ello el derecho que reclama, ni tampoco que la declaración del demandado que compareció como testigo se refería a transacciones realizadas con el esposo fenecido.

Sin embargo, tratándose como se trata de una ley de excepción, creemos que no erró la corte sentenciadora al no aplicarla a un caso que no está comprendido estrictamente dentro de sus preceptos. Esto no quiere decir que admitida la declaración deban perderse de vista los motivos que llevaron al legislador hasta decretar la prohibición absoluta de declarar en casos semejantes, cuando llegue el momento de pesar la evidencia aportada por una y otra parte.

■ Los otros cuatro errores serán estudiados conjuntamente ya que para resolverlos precisa analizar en conjunto

la evidencia relacionándola con las alegaciones de una y otra parte y la ley y la jurisprudencia aplicables.

La demandante introdujo en evidencia los autos del pleito núm. 6738 seguido en la Corte de Distrito de San Juan por los aquí demandados contra la aquí demandante y sus hijos sobre ejecución de hipoteca de los cuales resulta que se pidió sentencia por $3,625 por capital e intereses del crédito hipotecario de tres mil dólares constituído por escritura pública de abril 14, 1925, a favor de la causante de los aquí demandados; que dictada la sentencia, se ordenó la venta en pública subasta de la finca hipotecada, y que la venta se llevó a efecto en agosto 30, 1928, por $4,100 pagándose a los aquí demandados $4,021.66, dejándose el resto para satisfacer las contribuciones adeudadas. El márshal notificó a los inquilinos que debían desalojar la casa. Entre los "inquilinos" figura la aquí demandante María Aldea Díaz.

La dicha escritura de abril 14, 1925, se transcribe íntegra en la exposición del caso. Fué otorgada por Fernando Pozada y su esposa la demandante de una parte, de otra Antonio Gayol y de otra Marcos Tomás Caneja quien concurrió en representación de su esposa Ana Piñán.

Expusieron los esposos Pozada-Aldea que eran dueños de un solar con casa en Puerta de Tierra, siendo la casa de dos plantas, de concreto, y estando marcada con el núm. 84 de la calle de San Agustín; que adquirieron el solar "y otra casa que en el mismo existía y que fué destruída por un incendio", por compra a José Fernández en junio 13, 1907, y "en cuanto a la casa que ahora existe, por edificación con fondos de la sociedad conyugal"; que la finca está gravada con hipoteca constituída a favor del compareciente Gayol para garantizarle un préstamo de tres mil dólares y que habiendo el acreedor recibido el capital y los intereses de dicha hipoteca, "con anterioridad a este acto de manos de los esposos" deudores, procedía que otorgara como en efecto otorgó la cancelación total del gravamen. Con este motivo aparece consignado expresamente en la escritura lo que sigue:

Los comparecientes Sres. Gayol y Martínez y los esposos Pozada-Aldea desean hacer constar que la finca anteriormente descrita en cuanto a la casa se refiere es la misma que se describió en la escritura de constitución de hipoteca, con la diferencia de que entonces dicha casa tenía sólo el frente de concreto y los lados y la espalda de maderas y que ahora toda la casa es de concreto, deseando aclarar también que esa sola casa y el solar aquí descritos eran los que se hallaban afectos a la hipoteca que en virtud de esta escritura ha quedado totalmente cancelada.''

Siguieron declarando en el documento los esposos Pozada Aldea que tenían concertada una operación de préstamo con doña Ana Piñán, representada en el acto por su esposo Caneja, y llevándola a efecto ambas partes estipularon substancialmente lo que sigue: tres mil dólares prestados por doña Ana a los esposos garantizados por éstos con ''primera hipoteca voluntaria sobre la finca de su propiedad descrita en el precedente primero de la exposición, a favor de su acreedora la mencionada doña Ana Piñán Acevedo, entendiéndose incluída en la hipoteca todas las actuales pertenencias y derechos de dicha finca y las que en el futuro se adicionen.''

Tal, en resumen, la prueba documental de la demandante. La testifical consistió en su propia declaración y en la de Francisco Figueroa.

Ella manifestó que vivió con su esposo y sus hijos en la casa en cuestión desde que la adquirieron en 1907, que cuando se constituyó la hipoteca de 1925, vivía ''en la misma casa, pero en la casita de atrás'' con sus nietos dependientes de su esposo; que al morir éste allí quedó ayudada por su hijo mayor hasta que fué desahuciada. Siguió expresándose textualmente así:

''La casa del frente era una casita de madera, de tejamaní. . . . Luego hubo un fuego y se destruyó y con 1,200 o 1,100 pesos que teníamos de economía en el banco y 3,000 pesos que cogimos de préstamo a Don Antonio Gayol, hicimos la parte de concreto, pero siempre nos quedamos viviendo en la casita que fabricamos en 1910. . . . la parte de alante de esa casa, esa de dos plantas, de

concreto fué la que construímos con los tres mil dollars que prestó Gayol y 1,200 que teníamos de economía, pero la parte atrás en donde yo vivía ésa estaba hecha desde 1910, antes de la transacción con Gayol, . . . Cuando se hizo la hipoteca de Doña Ana Piñán yo vivía en la casita de atrás y mi esposo también; todos. Mi esposo le tomó los 3,000 pesos a Doña Ana pero yo no le puedo decir en qué fué que él los invirtió. . . . Cuando se tomaron los $3,000 a Don Antonio Gayol la casa de la parte de atrás existía allí; ésa no se quemó."

Y Figueroa, en resumen, dijo que la demandante es su suegra y la conoce desde 1926; que desde que la conoció vivía en San Agustín 84 con un nieto y con su hija menor que es hoy la esposa del testigo, viviendo también con ella ocasionalmente otra hija; que la propiedad constaba de un edificio de concreto de dos plantas con frente a la calle, existiendo en el fondo del patio una casa de mampostería y madera que era la en que vivía la demandante; que ambas casas "forman un solo cuerpo." Se insiste en que explique mejor y contestó textualmente:

"Porque hay una construcción que es de dos plantas, de concreto y la otra demuestra que es una casa que fué construída con anterioridad a la que da al frente de la calle, pero está unida. Están formando un solo cuerpo, como si se pegara esta silla de esta mesa.

"La señora vivía en la casita del fondo; la parte de frente del edificio estaba ocupada, en las dos plantas, por otras personas, no eran familia de Doña María, sino inquilinos que pagaban rentas."

La prueba aportada por los demandados fué testifical. Declararon Marcos Tomás Caneja, uno de los demandados, y Francisco Rivera Collazo, el adquirente de la casa en pública subasta.

El primero dijo:

"Conozco a Doña María Aldea y Díaz y conocí también a su esposo, Don Fernando Pozada y Luis. Y a Doña Ana Piñán y Acevedo, pues era mi esposa y es fallecida. Conocí a Don Antonio Gayol y Martínez. Recuerdo haber visto a Don Antonio Gayol, a Don Fernando Pozada y a Doña María Aldea, allá para el 4 de abril de 1925 en la notaría del señor Dubón. El señor Pozada me había manifestado que necesitaba 3,000 pesos para pagarle al señor Gayol."

Se opuso la demandante y surgió el incidente que dió origen al primer señalamiento de error. Autorizado por la corte y con la protesta de la demandante el demandado continuó declarando como sigue:

"Esos 3,000 pesos fueron dados, yo hice la operación de préstamo a nombre de mi esposa, Doña Ana Piñán y como apoderado de ella. El señor Gayol recibió el dinero. Lo sé porque don Fernando Pozada me mandó que le entregara a él el dinero y a él mismo se lo entregué, porque él tenía que firmar la cancelación de la otra hipoteca antes de firmar la mía. Entregué el dinero en la notaría del Ldo. Dubón en abril de 1925. Era próximo para irme yo a España y él me insinuó que le sacara de ese apuro de la deuda que tenía de la construcción de la casa con el señor Gayol. Esa manifestación me la hizo el señor Pozada. . . . Esa fué la única operación de préstamo con garantía hipotecaria que hice con don Fernando Pozada y Luis; o mi esposa Ana Piñán. Ese dinero se entregó al señor Gayol en la notaría del Ldo. Dubón en el mismo momento de firmarse la escritura. Estaban presentes ellos dos y nosotros dos y el señor Dubón, por supuesto; todo eso ocurrió en la oficina del señor Dubón en la calle Tetuán."

Rivera Collazo manifestó:

"Conozco la casa número 84 de la calle San Agustín pues es mía hoy. Es mía desde 1928. La compré en la Corte de Distrito en la misma fecha en que se celebró la subasta en el pleito 6738 de esta Corte. Recuerdo el ciclón de San Felipe; fué en el 1928 casi a raíz de la adquisición de la finca. Conozco a la señora María Aldea Díaz. La vi una vez. Yo vi a esa señora en esa casa para los primeros días de septiembre de 1928 que estuve por allí con el márshal. Eso fué antes del ciclón. Después del ciclón volví a la casa y doña María no estaba allí."

Esa fué toda la prueba que sirvió de base al juez sentenciador para llegar a las conclusiones que establece en su relación del caso y opinión.

Aceptando que pudiera estimarse probado que los tres mil dólares que se tomaron prestados a Gayol se emplearan en la reconstrucción de la casa de concreto de dos plantas y que los que luego se obtuvieron de la causante de los demandados se dedicaron a cancelar la deuda con Gayol, no

creemos que pueda prescindirse de tomar en consideración, como prescindió el juez sentenciador por completo, la existencia de la casita del fondo que según evidencia no controvertida constituía el verdadero hogar de la demandante y que no fué al parecer comprendida en la hipoteca a Gayol y sí lo fué en la hipoteca ejecutada por los demandados, motivo por el cual se incluyó en la venta en pública subasta.

Esa casita parece que tenía un origen independiente no obstante formar un solo cuerpo con la de dos plantas de concreto que se hipotecó a la causante de los demandados. Se construyó con anterioridad al incendio y no pereció a virtud de éste. Si Gayol hubiera ejecutado su hipoteca, contra Gayol hubieran podido reclamar los dueños de la finca en relación con la pequeña casa del fondo en que vivían su derecho de hogar seguro de haberse vendido la totalidad de la finca para el pago del crédito, ya que el dinero tomado a Gayol no se empleó en ella sino en la casa del frente. Y como todo el derecho que la Corte reconoce a los demandados emana del que hubiera tenido Gayol, no existiendo éste, cae por su base aquél.

Pero hay más. Se reconoce que ni al celebrar el pacto con Gayol ni al contratar luego con la causante de los demandados hubo renuncia del derecho de hogar seguro por parte de los esposos Pozada-Aldea. También se reconoce que no hubo acuerdo alguno sobre subrogación de la Señora Piñán en el lugar del Sr. Gayol. A lo más que puede llegarse es a concluir que quedó demostrado que necesitando los esposos Pozada-Aldea dinero para pagar su deuda con Gayol lo pidieron a la Sra. Piñán y de ella lo obtuvieron como un contrato corriente, independiente, de préstamo garantizado con hipoteca, sin consideración alguna al destino que el prestatario habría de dar al dinero recibido. El empleo del dinero, aun aceptando como cierta la declaración del demandado Caneja, no puede concluirse que fuera una condición para la celebración del contrato. Y la jurisprudencia ha resuelto que

tales operaciones no son las que garantiza una ley como la nuestra en contra del derecho de hogar seguro.

En el caso de *Engaard* v. *Schmidt,* 171 N. W. 905, 906, la Corte Suprema de Nebraska se expresó así:

"El hecho de que un hombre casado tomara dinero a préstamo, y le manifestara al prestamista al momento de hacer el préstamo, que tenía el propósito de usar el dinero, o parte del mismo, para pagar un hogar seguro previamente adquirido y enajenado, y de que el dinero se use efectivamente para ese fin, no basta, cuando figura aisladamente, para que dé derecho al prestamista a tener un gravamen a su favor por el precio de la compraventa. En el caso de autos no existía entre las partes la relación de vendedor y comprador, ni se creó un gravamen a favor del vendedor u otra carga similar. La deuda fué constituída y las enajenaciones hechas mucho antes de efectuarse el préstamo. El demandante no pagó la deuda a instancias del deudor, sino que meramente le prestó el dinero directamente sin que hubiera pacto alguno respecto al uso que debía dársele al mismo. *Rodman* v. *Sanders,* 44 Ark. 504; *Griffin* v. *Proctor's Adm'r.,* 14 Bush (Ky.) 571; *Carey* v. *Boyle,* 53 Wis. 574, 581, 11 N. W. 47."

El caso de *Ruiz* v. *Barreto,* 46 D.P.R. 369, 372, no tiene el alcance que le dió la corte sentenciadora y le da la parte apelada. Quizá debimos ser en él más específicos, pero no surgió allí la necesidad para ello, porque la decisión que se dictaba lo era en favor del reconocimiento del derecho de hogar seguro. Nuestra opinión en aquel caso debe interpretarse en armonía con ésta que emitimos ahora. Si ambas partes convienen en que el dinero prestado debe emplearse para saldar en todo o en parte la deuda o el gravamen incurrido por la compra de la propiedad o para las mejoras que en ella se hicieren (*Disponiéndose* de la sec. 4 de la Ley de Hogar Seguro, Código de Enjuiciamiento Civil, ed. 1933, págs. 306 y 307), y en realidad se emplea, entonces el destino que debe darse y se da al dinero recibido en préstamo, es y debe considerarse como una condición del contrato que coloca al nuevo prestamista en la misma situación que al antiguo en cuanto al derecho de hogar seguro.

█ Resta sólo considerar las excepciones previas cuya decisión se dejó por estipulación de las partes aprobada por la Corte para luego de practicada la prueba.

La de prescripción no se formuló de acuerdo con la ley. Artículo 128 del Código de Enjuiciamiento Civil; *Catoni v. Martorell, Viuda de Prado,* 38 D.P.R. 328. Se limitaron los demandados a alegarla sin citar el estatuto en que la basaban.

En el alegato que presentaron ante esta Corte Suprema sostienen sin cita pertinente de autoridades ni razonamiento alguno de peso que la acción que pudiera corresponder a la demandante sería una de daños y perjuicios de acuerdo con el artículo 1803 del Código Civil, que dura sólo un año.

El derecho de hogar seguro está reconocido por la ley. Su naturaleza ha sido fijada en repetidas decisiones de esta propia Corte Suprema. Se disfruta en la finca, pero sólo se extiende en ella hasta el valor de quinientos dólares y cuando la finca se vende por ser su valor mayor para hacer efectivas obligaciones del dueño no exentas de ejecución, queda reducido a la suma de quinientos dólares. Sostener que la reclamación de ese derecho constituye una acción de daños y perjuicios, es colocar el caso fuera de su peculiar naturaleza. El derecho que da origen a la reclamación no surge como consecuencia del acto culpable o negligente del acreedor. Existe previamente constituído a favor del deudor en la propiedad gravada a favor del acreedor. Éste tiene derecho a cobrar su deuda vendiendo la propiedad gravada pero reconociendo y satisfaciendo a la vez el derecho de su deudor a la suma de quinientos dólares. No lo hizo así en este caso el acreedor y la acción que contra él quedaba al deudor que no se encontraba ya en la propiedad del inmueble, era una personal de cobro de dólares que no teniendo término especial de prescripción fijado por la ley dura quince años de acuerdo con el artículo 1864 del Código Civil, ed. 1930.

Con respecto a la excepción de falta de hechos todo lo que se dice en el alegato de los apelados es:

"Planteábamos como defensa especial, que la demanda no aduce hechos suficientes constitutivos de causa de acción, y que de no aducirlos la acción de la demandante estaba prescrita, excepción ésta inspirada en la doctrina establecida por esta Corte en *Catoni* v. *Martorell Vda. Prado,* 38 D.P.R. 328."

El caso que citan les es más bien adverso. En él decidió esta corte:

"Y en tercero y último lugar porque si bien es cierto que las llamadas excepciones privilegiadas de falta de jurisdicción y de hechos pueden alegarse por vez primera en esta Corte Suprema, la de falta de hechos no comprende la de prescripción en un caso como éste.

"La contienda se suscitó y quedó trabada en la corte de distrito. La demandada alegó mal en la primera ocasión y dejó de alegar en la segunda su defensa de prescripción. Su actuación implica la renuncia de un privilegio y partiendo de la base de esa renuncia la demanda es enteramente suficiente, aduce todos los hechos necesarios para sostener la acción ejercitada y la sentencia dictada."

Además aunque dentro de la excepción general de falta de hechos se hubiera podido considerar la de prescripción, ya hemos visto que estudiada en sus méritos tendría siempre que ser declarada sin lugar.

Y en cuanto a la falta de parte demandada basada en que debió traerse al procedimiento al comprador de la finca en pública subasta, bastará citar para sostener su improcedencia, lo que dijo esta corte en el caso de *Veve* v. *Keith,* 49 D.P.R. 185, 188, a saber:

"Establecido el hogar seguro y declarada su existencia mediante prueba, surge para el dueño el derecho de percibir, y para el acreedor ejecutante la obligación de pagar el importe del mismo al consumarse la venta judicialmente ordenada."

Por virtud de todo lo expuesto y apareciendo claro de los autos que la demandante tenía constituído su hogar seguro sobre la finca de que se trata cuando ésta fué ejecutada por los demandados, debe revocarse la sentencia apelada y dictarse otra declarando la demanda con lugar y en

su consecuencia ordenando a los demandados que paguen a la demandante la suma de quinientos dólares, valor de su derecho de hogar seguro, sin especial condenación de costas.

El Juez Asociado Señor Córdova Dávila no intervino.