JOSÉ CASTAÑER FONT, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE AGUADILLA, HON. WILLIS RAMOS VÁZQUEZ, JUEZ, demandado.

Número 2313.

*Sometido:* 29 de febrero de 1960. *Resuelto:* 10 de junio de 1960.

*Ángel Manuel Ciordia,* abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

La ilustrada Sala de Aguadilla del Tribunal Superior de Puerto Rico, denegó la protocolización de un testamento ológrafo, que copiado al pie de la letra, dice así:

"7/4/55

"Yo, Adele Bandler Castañer, casada con José Castañer y residiendo en el camino Borinquen de Aguadilla, casilla de correos 762, declaro ser éste el único testamento que he otorgado, según a continuación se expresa:

"1. A mi muerte, lego todas mis propiedades en el camino Borinquen, consistentes en 3 casas y 38 centésimas de cuerda de terreno, estando esta propiedad libre de cargas y deudas de clase alguna, a mi amado esposo José Castañer para su uso total y privilegio y si la necesidad así lo requiriere, él podrá venderla como le plazca, por pertenecerle la propiedad en su totalidad.

"2. Pero es mi deseo que él atienda siempre a mi querida hermana Sally Dávila, de Juan Domingo, Bayamón, y que a la muerte de mi esposo, la propiedad revierta a mi hermana Sally sin ningún sacrificio ni tropiezo.

"Todas las joyas que tenga al momento de mi muerte deben ir a manos de mi hermana Sally así como todos mis efectos personales.

"3. A Gloria Castañer de San Sebastián, Puerto Rico, la suma de cinco (5) dólares.

"4. A la señora Milagros Castañer Sánchez, asimismo la suma de cinco (5) dólares.

"5. Es mi deseo que se me entierre en Calere donde descansa Margaret.

"6. En la eventualidad que José Castañer y Sally Dávila me premueran, entonces lego todas mis propiedades al Hospital de Cáncer del Dr. Martínez."

El verdadero fundamento que tuvo la ilustrada Sala sentenciadora para denegar la protocolización del testamento es que el mismo no aparece firmado por la testadora. El peticionario alega que estando el testamento escrito todo de puño y letra de la testadora, la frase inicial: "Yo, Adele Bandler Castañer" . . . equivale a la firma que requiere el art. 637 del Código Civil de Puerto Rico, 31 L.P.R.A. 791, sec. 2161, que en cuanto al testamento ológrafo, dispone en su parte pertinente: "Para que sea válido este testamento, deberá estar *escrito* todo y *firmado* por el testador, con expresión del año, mes y día en que se otorgue."

La firma—dice Puig Peña—es la que distingue el testamento acabado del proyecto de testamento: Puig Peña—*Tratado de Derecho Civil Español*, Tomo V, Volumen I, pág. 242,

escolio 34 (ed. de la Editorial Revista de Derecho Privado de 1954).

El problema que presenta este caso, dentro de la teoría pura del Derecho Civil, es que todo lo que aparece después de la firma de un testamento, las llamadas "adiciones" se consideran como no puestas a menos que a su vez, las adiciones estén debidamente fechadas y firmadas. Puig Peña, obra y edición citadas, págs. 226–227. Si tuviéramos que considerar las palabras iniciales: "Yo, Adele Bandler Castañer" como la firma del testamento, el resto de la autografía testamentaria quedaría transformada en una "adición" y como tal automáticamente anulada por no haber sido fechada y firmada de nuevo.

Ahora bien, la disposición del segundo inciso del art. 637 de nuestro Código—equivalente al art. 688 del Código Civil español—es tan terminante, la secuencia del proceso testamentario está tan bien descrita dentro de dicha disposición: primero, la redacción y segundo, la firma, que no hay margen para suponer que la firma puede colocarse antes y la redacción del testamento después. Según Puig Peña, del art. 688, ap. 3 del Código Civil Español (art. 637, ap. 2 del nuestro): "puede extraerse la regla de que la firma debe concluir, cerrar o finalizar el testamento no formando parte del mismo las palabras extendidas después de aquélla" (t. pág. 246).

Es indudable que el término jurídico "firma" tiene una individualidad caligráfica distinta a la mera redacción manuscrita del nombre propio para otros fines distintos a la solemne suscripción de la voluntad final de un escrito. El ilustrado Juez sentenciador hizo suya la definición de "firma" contenida en la Sentencia del Tribunal Supremo de España de 5 de enero de 1924: "por firma de una persona se entiende la que ésta, en todos los actos de su vida, lo mismo en aquellos más importantes y solemnes que en los corrientes, en su

relación con las demás personas, acostumbra a *estampar al pie* de sus escritos".

La firma como algo distinto a la redacción manuscrita del nombre propio, forma parte del pequeño sistema especial de autenticidad que el Código ha querido disponer para el caso del testamento ológrafo. Todo testamento ológrafo necesita estar "firmado por el testador" y la firma no puede ser otra que aquella que demuestra una última suscripción de la voluntad testamentaria, conocida y apreciado todo el texto que la precede. La exigencia de este requisito no forma parte de un ritual testamentario que pudiera repugnar a un tiempo distinto, sino una exigencia saludable a la excepción que representa el testamento ológrafo. Sobre este último extremo, oigamos a Puig Peña: "Este rigorismo de la jurisprudencia en orden a la necesariedad de la firma en el testamento ológrafo tiene una explicación lógica dada la importancia que la misma tiene en estas formas de testar. Aparte, efectivamente, de la exclusión que por su naturaleza se hace en este testamento de fedatarios o testigos que avalen el acto, lo que hace resaltar aún más la trascendencia de la firma . . . no puede olvidarse que ésta viene a constituir una a modo de integración de la voluntad testamentaria y, sobre todo, la declaración fundamental de que la redacción autografiada corresponde efectivamente a la persona que la ha hecho . . . Pensando en esto y en otras consideraciones de evidente relieve como, por ejemplo, constituir ello un elemento calificado de la identidad y capacidad del testador, en el momento de emitir su declaración de voluntad, todas las legislaciones que han aceptado esta forma de testar exigen la suscripción del documento por la persona que lo emite, dando al requisito el valor de condición *sine qua non* de su validez, exactamente igual que lo ha hecho la jurisprudencia de nuestro más alto Tribunal." Puig Peña, obra y edición citadas, pág. 242.

*Siendo esto así, debe anularse el auto expedido.*