.AB INTESTATO DE BORIS NAKDIMEN; ABRAHAM NAKDIMEN, CHARLES NAKDIMEN, MEYER NAKDIMEN, WILLIAM NAKDIMEN y RACHEL NAKDIMEN SLOVIS, herederos-apelantes-apelados; AARON KURIE, acreedor-apelante-apelado.

*Número:* 12529.　*Resuelto:* 15 de septiembre de 1961.

*Luis F. Cuyar* y *Jorge Benítez Gautier*, abogados del apelante Sr. Aaron Kurie; *Joshua Hellinger*, abogado de los herederos apelantes.

Sala integrada por el Juez Asociado señor Hernández Matos, como Presidente de Sala, y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Dentro del procedimiento de administración del caudal relicto al fallecimiento de Boris Nakdimen, el Tribunal Superior, Sala de San Juan, dictó una sentencia a) reconociendo un crédito de $1,425 a favor de Aaron Kurie; y, b) determinando que ciertos bonos de ahorro, serie E, de Estados Unidos y certificados postales de ahorro, serie de 1954, que habían sido remitidos por el finado a dicho Aaron Kurie debían ser incluidos en el capital sujeto a distribución entre los herederos. Se recurrió ante nos para revisar ambos pronunciamientos.

Nakdimen falleció en San Juan, Puerto Rico, en 11 de enero de 1956 sin haber otorgado disposición testamentaria alguna. Por no tener herederos forzosos, su sucesión legítima está compuesta por cinco hermanos. Con anterioridad a su muerte, Nakdimen remitió por correo certificado, en 27

de diciembre de 1955, a su íntimo amigo Kurie los bonos mencionados con una comunicación sin fecha y redactada en el idioma hebreo, que traducida literalmente lee como sigue:

"Mejor y verdadero amigo Mr. Kurie:

Perdone que le escriba en hebreo y también por no haber contestado inmediatamente su carta. Visité a mi médico hoy y él me dio a entender que tanto Dr. Krone como la Clínica Mayo rehusan hacerse responsables de lo que me pueda pasar después de la operación. Estoy esperando que usted venga a Puerto Rico. Usted será el único que me ayudará a resolver lo que más me conviene. Sé que usted me aprecia Mr. Kurie, pero como podré vivir hasta tenerlo a usted en Puerto Rico, espero tenerle aquí pronto. Me quedo pocas veces en Corozal. Le envío 2500, en certificados postales de ahorro y 6000 en bonos, *todo deberá ser suyo si algo me pasara*. Usted es mi único y mejor amigo Mr. Kurie y usted ha sufrido conmigo todos esos meses que pasé con usted este año y antes. Le debo a usted tanto dinero que arreglaremos cuentas cuando usted venga. Creo que ya no hay esperanza para mí, creo que todo quedará entre nosotros dos, lo que usted sabe. Confío en que recibiré carta suya tan pronto como usted la reciba. Estoy terminando de escribir, les envío a todos mis sentidos afectos, su mejor amigo,

Boris Nakdimen

Escríbame a la dirección B. Nakdimen, P. O. Box 4132—San Juan, Puerto Rico.

"La carta que usted me escribió se me quedó en la cabeza, esa es la realidad." (Bastardillas nuestras.)

Luego le escribió otra carta, sin fecha y en el mismo idioma, cuya traducción literal es la siguiente:

"Querido amigo Mr. Kurie:

No estoy nada de bien otra vez. Me atenazó y me puso en la cama. Me siento muy mal. Parece que no podré esperarle. No sé que hacer. Lo tengo a usted presente en la memoria continuamente. Le doy las gracias por su carta pero *yo quiero que los bonos sean para usted porque no duraré mucho*. Perdóneme todo no puedo escribir más. Los saluda a todos afectuosamente

Su mejor amigo,<br>Boris." (Bastardillas nuestras)

En una vista celebrada Kurie prestó testimonio para establecer que había hecho adelantos de dinero a Nakdimen en calidad de préstamos, en cuatro ocasiones distintas, por una suma total de $1,425.00. Indicó que no tenía documentos o recibos reconociendo la deuda, ni cheques, por haberse hecho las entregas en dinero efectivo. La sucesión objetó esta declaración por referirse a transacciones con un finado. Se presentó prueba para establecer que esta deuda no aparecía consignada en los libros de contabilidad del extinto, aun cuando se reconocía adeudar la suma de $251.06 a la firma Reliable Watch Co., empresa bajo la cual Kurie hacía negocios.

## I

■ El tribunal de instancia indicó que el testimonio de Kurie sobre los anticipos de dinero al finado no había sido contradicho, "y por lo tanto tenemos que declarar que Nakdimen al morir le debía a Kurie la cantidad de $1,425.00". De la transcripción de evidencia no aparece que el juez recurrido resolviera específicamente sobre la objeción presentada en cuanto a la admisibilidad de la declaración relatada para establecer la existencia de la deuda. Con vista de las determinaciones de hecho formuladas, y no habiéndose presentado ninguna otra evidencia sobre este particular, forzoso es concluir que desestimó tal objeción.

La sección 3 de la Ley de 10 de marzo de 1904 (Leyes, pág. 121, 32 L.P.R.A. sec. 1738) dispone que:

"En las demandas por o en contra de los albaceas testamentarios, administradores o tutores en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste."

Desde *Wilcox* v. *Axtmayer et al.*, 23 D.P.R. 343 (1916), hemos interpretado el precepto transcrito como un impedimento para ser testigo, o sea que una parte en un pleito que se suscite contra los herederos o representantes legales de un finado por virtud de transacciones habidas con éste, no puede declarar como testigo respecto a tal transacción, a menos que sea requerido para ello por la parte contraria. Tratábase allí de un convenio oral para el pago de honorarios de abogado por la tramitación de una acción de divorcio. Dijimos: "Debe procederse con mucha cautela en la apreciación de una prueba semejante a la practicada en este caso. [El causante de los demandados] había muerto cuando la demanda se interpuso. El demandante no pudo presentar documento alguno en que [dicho causante] reconociera directa o indirectamente en una forma clara y precisa la obligación que el demandante alega que contrajo para con él, y probar tal obligación por medio de manifestaciones hechas por una persona que ya no puede comparecer ante una corte a declarar sobre ellas, es en verdad bien arriesgado." Véanse, *Biaggi* v. *Sucn. Esbrí*, 71 D.P.R. 450 (1950); *Pereles* v. *Martinó*, 73 D.P.R. 848 (1952); y *Danz* v. *Suau*, 82 D.P.R. 609 (1961).

Conscientes de que esta disposición legal debe considerarse más bien como un factor que debe utilizar el juez en la apreciación de la prueba que como una regla inflexible de exclusión, *Aldea* v. *Tomás y Piñán*, 51 D.P.R. 764 (1937), hemos atemperado el rigor de su aplicación negándonos a extenderla más allá de los términos expresos del estatuto.(¹) Sin embargo, la situación que consideramos no permitía al juez de instancia admitir la declaración ofrecida para comprobar la existencia del crédito reclamado que emanaba precisamente de los labios de una de las partes en la transacción cuando

---

(¹)*Saunnión* v. *Díaz*, 29 D.P.R. 615 (1921); *García* v. *Santos*, 29 D.P.R. 880 (1921;) *Lezcano* v. *Sucn. Sifonte*, 42 D.P.R. 400 (1931); *Colón* v. *Sucn. Tristani*, 45 D.P.R. 227 (1933); *Sánchez* v. *Sánchez*, 58 D.P.R. 577 (1941); *Viera* v. *Sucn. Goitía*, 60 D.P.R. 653 (1942); *Rodríguez* v. *Arocho*, 62 D.P.R. 700 (1943); *Boscio* v. *Vilá*, 67 D.P.R. 604 (1947).

el supuesto obligado había fallecido. Cf. *Cestero* v. *Sucn. Cestero*, 35 D.P.R. 991, 999 (1926), en donde se indica que la expresión "Le presté a mi hermano $1,000" no era admisible de haber sido objetada oportunamente.

Erró, pues, el tribunal de instancia al desestimar la objeción oportunamente levantada por el abogado de la sucesión.

## II

Los bonos serie E, conocidos como Bonos de la Libertad, a que se refiere la presente contienda, fueron expedidos en 19 de agosto de 1954 a favor del finado Boris Nakdimen. Al dorso de los mismos se hace constar que se han emitido sujetos a la circular núm. 653 del Departamento del Tesoro de Estados Unidos (3a. revisión) y a los reglamentos pertinentes, cuyas disposiciones se incorporan por referencia. Específicamente se indica que no son transferibles, y que, excepto en los casos a que se refieren dichos reglamentos, son pagaderos únicamente a la persona a favor de quien se expidieren. A los fines de pago se requiere que el adquirente los presente personalmente al cobro, y previa la debida identificación, firme la solicitud de pago en presencia de un funcionario autorizado para verificar tal pago. Es conveniente advertir que antes de remitir los bonos a su amigo Kurie, el causante Nakdimen había firmado la solicitud de pago. Las disposiciones pertinentes de los reglamentos se copian al margen.(²)

---

(²) Las disposiciones pertinentes sobre bonos son las siguientes, tomadas de 31 C.F.R. 1959:

§ 315.0 *Aplicabilidad de los reglamentos*. Los reglamentos contenidos en esta Parte se aplican en general a todos los Bonos de Ahorro de los Estados Unidos de todas las series independientemente de su designación, independientemente de la fecha de su emisión, salvo lo que aquí específicamente se disponga en contrario.

§ 315.20 *En General*. (a) No se reconocerá ninguna determinación judicial que dé efecto a una supuesta transferencia voluntaria inter vivos de un bono o que deje sin efecto o menoscabe los derechos de supervivencia conferidos por estos reglamentos a un condueño o beneficiario supérstite, y toda otra disposición de este apartado E está sujeta a esta restricción. De lo contrario, se reconocerá una reclamación contra un dueño o condueño

█ El tribunal de instancia acertadamente sostuvo que, aun cuando los bonos fueran transferibles, las dos comunicaciones transcritas al comienzo de esta opinión no podían ser consideradas como una donación *mortis causa*, ya que no estaban fechadas. [3] Por tanto, como las donaciones que hayan de producir sus efectos por la muerte del donante se rigen por las reglas establecidas por la sucesión testamentaria por participar de la naturaleza de disposiciones de última voluntad—artículo 562 del Código Civil (31 L.P.R.A. sec. 1985), los escritos aludidos no califican como testamento ológrafo—artículo 637 del Código Civil (31 L.P.R.A. sec. 2161). Cf. *Castañer v. Tribunal Superior*, 81 D.P.R. 869 (1960); *Crespo v. Irizarry*, 71 D.P.R. 963 (1950); *Ex parte Planis v. Pueblo*, 42 D.P.R. 689 (1931); *Vázquez v. Vázquez*, 34 D.P.R. 241 (1925). Las disposiciones reglamentarias federales reconocen expresamente las donaciones *mortis causa*, con ciertas limitaciones, 31 C.F.R. 1959 sec. 315.20 (a) y (b) y sec. 316.8.

de un bono y reclamaciones opuestas en cuanto al título, o en interés en, tal bono entre condueños y entre el dueño inscrito y beneficiario, luego de haberse establecido mediante procedimientos judiciales válidos, a la presentación y entrega del bono, pero sólo según se dispone específicamente en este apartado E.

(b) *Donaciones causa mortis.* Un bono que pertenezca exclusivamente a una persona, será pagado o re-emitido a solicitud de la persona que un tribunal haya determinado que tiene derecho al mismo en virtud de una donación causa mortis hecha por el único dueño.

§ 316.8 *Intransmisibilidad.*

Los bonos de la Serie E no pueden utilizarse como colateral de un préstamo o como garantía para el cumplimiento de una obligación, o transferirse intervivos por venta voluntaria o donación, descontarse o disponerse de ellos en forma alguna que no sea la dispuesta en los reglamentos que rigen los Bonos de Ahorro de los Estados Unidos. Salvo lo dispuesto en dichos reglamentos, el Departamento del Tesoro sólo reconocerá al dueño inscrito, en vida, y posteriormente al caudal hereditario o sucesión de éste.

[3] Se indicó además que las cartas no podían considerarse como testamento ológrafo porque fueron escritas en un idioma distinto del castellano o del inglés y no fueron hechas en presencia de dos intérpretes elegidos por el testador. Esta disposición del artículo 633 del Código Civil (31 L.P.R.A. sec. 2149) se refiere al testamento abierto. En cuanto al ológrafo expresamente se dice que los extranjeros podrán otorgarlo en su propio idioma (Art. 638 del Código Civil, 31 L.P.R.A. sec. 2161).

El tribunal de instancia determinó que "Tanto los bonos de ahorro como los certificados [postales] de ahorro no son transferibles y por lo tanto no pueden ser donados entre vivos". Se apoyó en *Ex parte De Jesús*, 68 D.P.R. 697 (1948) en donde resolvimos que el contrato de préstamo existente entre los adquirentes de bonos de ahorro de los Estados Unidos y el gobierno federal, por ser este gobierno una de las partes contratantes en el mismo, se convierte en uno federal y se rige necesariamente por las leyes y reglamentos federales, y añadimos que cualquier ley local mientras esté en conflicto con lo dispuesto en los reglamentos federales está subordinada a lo provisto por ellos. La posición adoptada en el caso de *De Jesús* fue posteriormente ratificada en *Veve* v. *Secretario de Hacienda*, 78 D.P.R. 731, 734 (1955).(⁴) Sin embargo, ambas situaciones envolvían bonos expedidos a nombre de dos personas en la alternativa (co-ownership). En nuestro caso se trata de bonos expedidos a favor de una sola persona, o sea, el adquirente original. Tampoco es de estricta aplicación lo resuelto en *Ronda* v. *Torres*, 71 D.P.R. 702 (1950) al efecto de que el importe de bonos serie E adquiridos por un esposo y expedidos a nombre de su esposa, a la muerte del esposo pertenece exclusivamente a la viuda y no a la sucesión del finado. Precisamente esta es una de las formas que se utiliza para efectuar una donación *inter vivos* de esta clase de obligaciones, o sea, comprando el bono y registrándolo

---

(⁴) En el citado caso de *Veve* sostuvimos que cuando bonos que han sido expedidos a nombre de dueños alternados permanecen en la exclusiva posesión y dominio de uno de dichos dueños hasta su muerte, y en virtud de la muerte de éste es que el sobreviviente adquiere por primera vez derechos efectivos sobre los mismos, dicho sobreviviente viene obligado al pago de la contribución estatal sobre herencia calculada sobre el importe total de los bonos. Véanse, *Smith* v. *Smith*, 169 N.E.2d 130 (Ind. 1960); *In re Berzel's Estate*, 101 N.W.2d 557 (N. D. 1960); *In re Messerschmidt's Estate*, 73 N.W.2d 123 (S. D. 1955); *In re Kaspari's Estate*, 71 N.W.2d 558 (N. D. 1955); cf. *District of Columbia* v. *Wilson*, 216 F.2d 630 (D. C. 1954); *Sucesión of Bendel*, 116 So. 2d 84 (La. 1959); *State Inheritance, estate or succession tax on United States Savings Bonds*, 39 A.L.R.2d 698 (1955).

directamente a nombre de la persona donataria, a quien en tal virtud, y por operación de los reglamentos mismos, se reconoce como dueña. La otra forma que no ofrece dificultad es comprar el bono a nombre del donante, y solicitar luego la reexpedición del mismo a favor del donatario. Debemos, pues, considerar si, bajo determinadas circunstancias, los, bonos y certificados postales expedidos a favor del adquirente únicamente pueden ser objeto de donación *inter vivos*.

El criterio de los tribunales americanos sobre si los bonos de ahorro pueden ser objeto de donación *inter vivos* o *mortis causa*, no es unánime. Algunos sostienen la negativa fundándose en la disposición literal de los reglamentos federales —que aparece transcrita en el bono mismo—al efecto de que los mismos no son transferibles, justificada por a) la necesidad de una interpretación uniforme sobre las relaciones contractuales entre el gobierno y el adquirente; b) la necesidad de facilitar la obtención de fondos por el Estado; c) la conveniencia de fomentar el ahorro y desarrollar una actitud de economía entre pequeños inversionistas, controlando así la inflación; d) la distribución de la deuda pública entre el mayor número de ciudadanos. *Connell* v. *Bauer*, 61 N.W.2d 177 (Minn. 1953); *Nelson* v. *Wheeler*, 256 F.2d 1080 (Mont. 1953); *Ex Parte Little*, 67 So.2d 818 (Ala. 1953); *In re Hackett's Estate*, 113 N.Y.S.2d 688 (N. Y. 1952); *Weeks* v. *Johnson*, 82 A.2d 416 (Mo. 1951); *Collins* v. *Jordan*, 110 N.E.2d 825 (Ohio 1949); *In re Nettle's Estate*, 91 N.Y.S.2d 255 (N. Y. 1949); *Brown* v. *Vinson*, 216 S.W.2d 748 (Tenn. 1949); *Hatfield* v. *Buck*, 85 N.Y.S.2d 613 (N. Y. 1948); *In re Bartlett*, 71 F. Supp. 514 (D.C. N.Y. 1947); *Fidelity Union Trust Co.* v. *Tezyk*, 55 A.2d 26 (N. J. 1947); *Bergman* v. *Greenwich Sav. Bank*, 74 N.Y.S.2d 638 (N. Y. 1947); *In re Tonkin's Estate*, 65 N.Y.S.2d 484 (N. Y. 1946); *Moore's Adm'r* v. *Marshal*, 196 S.W.2d 369 (Ky. 1946); *Bunch* v. *Hulsey*, 196 S.W.2d 373 (Ky. 1946); *Saper* v. *Sussman*, 56 N.Y.S.2d 377 (N. Y. 1945); *In re Borchardt's Estate*, 38

N.Y.S. 987 (N. Y. 1942) ; *In re Owen's Estate,* 32 N.Y.S.2d 747 (N. Y. 1941). Véanse, además, Jones, *United States Savings Bonds, Series E, F and G.,* 11 Md. L. Rev. 265-275 y 282-288 (1950). Nota, 32 Minn. L. Rev. 158 (1948) ; *Right Upon Death of Co-Owners of United States Savings Bonds,* 37 A.L.R.2d 1221 (1954). Los tribunales que han resuelto que los bonos pueden ser objeto de una donación indican que la disposición sobre la no transferibilidad regula únicamente las relaciones entre el gobierno y el adquirente, y que responde a la necesidad de proteger al Tesoro de pleitos relacionados con el título de los bonos y de establecer un sistema uniforme para su pago, que los haga atractivos en el mercado de inversiones por su movilidad y las facilidades ofrecidas para su redención. Reconocen, sin embargo, que las leyes locales—especialmente las relacionadas con sucesiones y sistemas de distribución de propiedad—son eficaces a los fines de determinar las relaciones entre los particulares. Con el propósito de armonizar ambas disposiciones—los reglamentos federales y las leyes locales—y de circunscribir cada una al ámbito de su respectiva aplicación, se ha recurrido a la ingeniosa fórmula de ordenar el cobro de los bonos siguiendo fielmente el procedimiento prescrito y cumpliendo con los requisitos para tal caso provistos por los reglamentos federales, y una vez efectuada la redención, se deposita su importe sujeto a la ulterior disposición que el tribunal acuerde aplicando la ley local que rige su distribución. *Levites* v. *Levites,* 169 N.E.2d 574 (Ill. 1960) ; *Silverman's* v. *McGinnes,* 259 F.2d 731 (CA 3, 1958) ; *Moore* v. *Brodrik,* 123 F. Supp. 108 (DC Kan. 1954) ; *In re Presender's Estate,* 125 N.Y.S.2d 83 (N. Y. 1953) ; *Velleman* v. *Stern,* 285 P.2d 681 (Cal. 1955) ; *Hausfelder* v. *Security-First Nat. Bank,* 176 P.2d 84 (Cal. 1946) ; *Marshall* v. *Felker,* 23 So.2d 555 (Fla. 1945) ; *In re Vaniceck's Estate,* 17 N.W.2d 477 (Neb. 1945) ; *Blair* v. *Kirchner,* 49 N.E.2d 292 (Ill. 1943) ; *In re Borchardt's Estate,* 38 N.Y.S.2d 987 (N. Y. 1942) ; *Dietzen* v. *American*

*Trust & Banking Co.*, 131 S.W.2d 69 (Tenn. 1939) ; *In re Estate of Diskin*, 161 Atl. 892 (Pa. 1932).

Es preciso hacer constar que bajo ciertas circunstancias hemos ordenado el cobro de bonos y el depósito de su importe para beneficio de los acreedores del caudal, *Barrios* v. *Manzano*, 79 D.P.R. 950 (1957).

En cuanto se refiere a certificados postales de ahorro como objeto de donación *inter vivos* o *mortis causa,* véanse, *In re Vanicek's Estate,* 17 N.W.2d 477 (Neb. 1945) ; *Blair* v. *Kirchner,* 49 N.E.2d 292 (Ill. 1943) ; *Dietzen* v. *American Trust & Banking Co.*, 131 S.W.2d 69 (Tenn. 1939) ; *In re Estate of Diskin,* 161 Atl. 893 (Pa. 1932) ; *Williams* v. *Letton*, 15 S.W.2d 296 (Ky. 1929). Véase además, 39 C.F.R. sec. 18.14 (c).

 Después de considerar la cuestión detenidamente adoptamos como regla local aquélla que reconoce que los bonos de ahorro y los certificados postales de ahorro pueden ser objeto de una donación *inter vivos,* sujeta a que la redención o cambio de éstos se ajuste al *procedimiento* prescrito en los reglamentos federales. El derecho de las partes al producto de dichas obligaciones se regirá, sin embargo, por la ley local.

No hay la menor duda de que el finado Nakdimen intentó hacer una transferencia de los bonos y certificados a favor de una persona determinada. Hemos resuelto que la transferencia no fue *mortis causa* por la razón indicada de que los documentos que evidencian el acto no cumplen con los requisitos de las disposiciones aplicables de la testamentifacción. Nos encontramos frente a una donación *inter vivos,* que no sólo se hizo por escrito, sino que fue acompañada de la entrega simultánea de la cosa donada, pues no puede interpretarse en otra forma el envío por correo de las obligaciones que además fueron firmadas por Nakdimen en el espacio destinado a la solicitud de cambio o redención. Admitimos que la primera carta puede considerarse como una donación

que habría de producir sus efectos por muerte del donante—su redacción indica que "todo deberá ser suyo *si algo me pasara*". (Bastardillas nuestras.) Pero, ante la aparente protesta de Kurie sobre su inmerecimiento de la generosidad de Nakdimen, éste le escribe nuevamente y le expresa que "yo quiero que los bonos sean para usted porque no duraré mucho". A nuestro juicio, el cambio de fraseología debe interpretarse como que se eliminó la condición original de la donación, o sea, "si algo me pasara". El hecho de que en la donación haya influido la inminencia de la muerte que presentía el donante no altera la situación. Este es un factor a considerar especialmente para hacer determinaciones sobre la imposición de contribuciones, cuestión que no entra en juego en este caso. *City Bank Farmers Trust Co.* v. *McGowan*, 142 F.2d 599, 601; *In re Thompson's Estate*, 68 N.E.2d 71 (Ohio 1946); *Mossberg* v. *McLaughlin*, 7 A.2d 910 (Conn. 1939).([5])

En virtud de todo lo expuesto se *revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 4 de junio de 1957, y en su lugar se dictará una nueva con los siguientes pronunciamientos: a) desestimando la reclamación de Aaron Kurie contra el caudal relicto al fallecimiento de Boris Nakdimen por el importe de préstamos ascendentes a $1,425.00; y, b) ordenando al administrador judicial Juan R. Molina, o a la persona que esté en la actualidad en funciones de dicho cargo, a que proceda a redimir o cambiar los bonos serie E y los certificados postales de ahorro a que nos hemos referido y a entregar su importe a Aaron Kurie....*

---

([5]) La distinción de si una donación ha sido efectuada en consideración a la muerte inminente (*in contemplation of death*) tiene importancia en un sistema contributivo en que se impone tanto una contribución sobre donaciones (*gift tax*) como una contribución sobre herencia (*estate tax*), con diferentes tipos aplicables. Esa cuestión no puede preocuparnos localmente ya que nuestro estatuto—Ley núm. 303 de 12 de abril de 1946 (Leyes, pág. 783, 13 L.P.R.A. sec. 881 et seq.) cubre tanto una donación *inter vivos* como una transferencia con motivo de la muerte. Véase, además, la sección 10(c) de la Ley mencionada (13 L.P.R.A. sec. 89(c)), que trata sobre la presunción de donación en cuanto a ciertas transferencias.